W. Willard **WIRTZ**, Secretary, United States Department of Labor, Plaintiff-Appellant and Cross-Appellee,

v.

**STEEPLETON GENERAL TIRE COMPANY**, Inc. and A. E. Steepleton, Defendants-Appellees and Cross-Appellants.

Nos. 15188, 15189.

United States Court of Appeals Sixth Circuit.

April 27, 1964.

Bessie Margolin, Associate Sol., Dept. of Labor, Washington, D. C. (Charles Donahue, Sol. of Labor, Beate Bloch, Atty., Dept. of Labor, Washington, D. C., Jeter S. Ray, Regional Atty., Dept. of Labor, Marvin M. Tincher, Nashville, Tenn., on the brief), for Secretary of Labor.

Lucius E. Burch, Jr., Memphis, Tenn. (Tom Mitchell, Jr., Memphis, Tenn., on the brief), for Steepleton General Tire Co., Inc., and A. E. Steepleton.

Before WEICK, Chief Judge, and KALBFLEISCH and PECK, District Judges.

WEICK, Chief Judge.

The two appeals present questions of coverage and exemption under the Fair Labor Standards Act, as amended. 29 U. S.C. § 201 et seq.

The action in the District Court was to enjoin the defendants from violating the minimum wage, overtime and record keeping provisions of the Act. It was conceded by defendants that they had not complied with the requirements of the Act, but they contended that it did not apply to their employees.

The District Judge heard the evidence and adopted findings of fact and conclusions of law. He held that the defendants' employees were engaged in commerce or in the production of goods for commerce within the meaning of the Act, and were covered by its provisions, but that their business was exempt from the requirements of the Act as a "retail or service establishment" under Sections 13 (a) (2) and 13(a) (4) of the amended Act.[1] He dismissed the complaint. The

1. Section 13(a) of the Amended Act exempts from the minimum wage and overtime requirements of the Act: "(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located * * *. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; or * * * (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular in-

Secretary of Labor appealed from the dismissal of his complaint. The defendants filed a cross-appeal from that part of the judgment which determined that they were engaged in interstate commerce and were covered by the Act.

Steepleton General Tire Company, Inc., a Tennessee corporation, was engaged in the sale and distribution of tires and tubes in the Memphis, Tennessee area, which included parts of the adjoining states of Arkansas and Mississippi. It was a franchised dealer of The General Tire & Rubber Company, an Ohio corporation manufacturing tires, tubes and other products. Steepleton provided tire recapping and repair service in its place of business in Memphis. Its customers consisted of individuals, who purchased tires for their own personal use, and commercial users including industrial and transportation companies. Commercial accounts comprised over 50% of its business some of which purchased at discounts. Steepleton made sales to federal, state and local governments on competitive bidding. It made delivery of tires out of its inventory to national accounts sold by The General Tire & Rubber Company. In 1960, which was selected by the parties as a typical year, Steepleton's annual sales of tires amounted to about $903,520 of which $86,000 was to out of state customers and about $58,000 to customers for resale. Its salesmen made regular calls upon customers located in parts of Arkansas and Mississippi.

■ In our opinion, Steepleton was covered by the Act. Its employees handled, transported and worked on tires destined for these customers outside of Tennessee. The employees removed, recapped, repaired and mounted tires for use on vehicles which operated in interstate commerce. Steepleton maintained accounting records with respect to its out of state sales. This was sufficient under the law to impose coverage. Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815; Wall-

ing v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; West Kentucky Coal Co. v. Walling, 153 F.2d 582 (C.A. 6).

There is left for our consideration only the question whether Steepleton was exempted from the requirements of the Act as a "retail or service establishment" under Section 13(a)(2) and 13(a)(4) of the amended Act.

It was the contention of Steepleton that the tire industry recognized only two classifications of sales. The sales to dealers who purchased for resale were claimed to be classified in the tire industry as wholesale. All other sales to ultimate consumers or users were recognized as retail irrespective of price, quantity, discounts, or commercial or industrial character. The Secretary, on the other hand, contended that the sales to commercial or industrial users were classified in the industry as wholesale sales. These included (1) sales and services to "fleet" accounts (customers operating five or more trucks or autos for business purposes at discount prices), (2) sales to national accounts and (3) sales made in competitive bidding to federal, state or local governments.

The Act, as originally passed in 1938, provided an exemption in Section 13(a) for "(2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." 52 Stat. 1060, 1067, 29 U.S.C. § 213(a)(2).

The 1938 Act was construed by the Supreme Court to reach "employees of only such retail or service establishments as are comparable to the local merchant, corner grocer or filling station operator who sells to or serves ultimate consumers who are at the end of, or beyond, that 'flow of goods in commerce' which it is the purpose of the Act to reach." Roland Electrical Co. v. Walling, 326 U.S. 657, 666, 66 S.Ct. 413, 417, 90 L.Ed. 383. In order to be considered "retail sales," the sales or services had to be to an ultimate

dustry notwithstanding that such establishment makes or processes at the retail

establishment the goods that it sells * * *."

consumer for his personal use. No sales or services for business uses or purposes were considered retail. Roland Electrical Co. v. Walling, supra; West Kentucky Coal Co. v. Walling, supra. Under the 1938 Act, Steepleton's commercial sales would be considered as wholesale.

But Congress amended the Act in 1949. Footnote 1 herein sets forth the 1949 Amendment. The Conference Report was clear that "any sale or service, regardless of the type of customer, will have to be treated by the Administrator and courts as a retail sale or service, so long as such sale or service is recognized in the particular industry as a retail sale or service." 95 Cong.Rec. 14,932, 2 U.S. Code, Congressional Service, pp. 2241, 2264 (1949). See also 95 Cong.Rec. 11,003–11,004. The Supreme Court, in Mitchell v. Kentucky Finance Co., 359 U. S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 construed the amended Act. Mr. Justice Harlan, who wrote the unanimous opinion of the Court, reviewed the legislative history of the 1949 amendment. He stated that it was the purpose of the amendment to reject the so-called "business use" test which had been adopted by the Administrator and approved by the Court in Roland "and to substitute a more flexible test, under which selling transactions would qualify as retail if they (1) did not involve 'resale,' and (2) were recognized in the particular industry as retail." Id., 359 U.S. p. 294, 79 S. Ct. p. 759, 3 L.Ed.2d 815

The only question in this case, therefore, is whether the sale of tires to commercial users were recognized in the tire industry as retail. Most of the evidence offered in the District Court related to this issue.

A. E. Steepleton, president of the defendant company, had been in the tire business since 1938. He testified that sales for resale were recognized in the industry as wholesale whereas sales to the ultimate consumer were retail. Mr. Steepleton was corroborated by testimony of representatives of the four largest rubber companies in Akron—Goodyear, Firestone, Goodrich and General.

These representatives of the "Big Four" related the customary practices and habits in the tire industry as far back as 1934 and they all agreed that the two part classification of tire sales in the industry was traditional. Where the sale was made to an ultimate consumer it was regarded as retail whether made to an individual for his personal use, to a business, industrial firm, trucking or bus company and irrespective of quantity, price or discounts.

Steepleton was further corroborated by the testimony of Winston W. Marsh, Executive Secretary and General Manager of National Tire Dealers and Retreaders Association which had a membership of 3200 tire dealers and Reuben E. Hedlund, Executive Secretary of the Chicago Tire Dealers Association and editor and publisher of "This Week in Tires," a trade media.

Dr. Warren W. Leigh, who was Dean of the College of Business Administration of the University of Akron and Professor in business administration, testified as to his familiarity with the sales practices in the tire industry. He confirmed the recognition in the tire industry of primarily "two classes—the wholesale which are sales for resale and consumer sales which they call retail."

The Secretary relied on the testimony of two college professors, one from Vanderbilt University and the other from University of Tennessee, and on classifications contained in Government publications such as the Standard Industrial Classification Manual and the Bureau of Census. Dr. Robert C. Brooks, Assistant Professor of Business Administration at Vanderbilt defined retail and wholesale sales as follows:

"In the retail and wholesale trades, which are of course a very large part of the field of marketing, the term 'retail' is applied to those transactions where the motive of the purchaser in buying is his own personal enjoyment or satisfaction.

"The term 'wholesale' includes all those transactions where the motive

of the purchaser is to use the product in the conduct of his business for profit making purposes, or, if it is a nonprofit institution, he intends to use it for the furthering of the aims of his institution."

Dr. John R. Moore, who was professor of economics at the University of Tennessee defined retail sales "as sales to the ultimate consumer, not sales to anyone who might use the product. By ultimate consumer we generally mean the final business consumer—the person who uses the product for his own personal enjoyment. In connection with the sales—say, a sale to one who will incorporate that product in their own service, we don't regard those as retail sales.

"On the other hand, a wholesale sale would include certainly sales for resale, but would also include sales to industrial distributors, to—I should say, to consumers or professional users of the product."

These definitions, he testified, were in accord with the Standard Industrial Classification Manual definition of retailing and wholesaling and other authorities in the field of economics and marketing.

Although the definitions and classifications testified to by Doctors Brooks and Moore may have value theoretically and academically and have been adopted in some industries, they do not conform to the practices as recognized in the tire industry. Doctors Brooks and Moore cited no authority from anyone connected with the tire industry in support of their definitions or classifications.

The Secretary also called as witnesses some commercial customers of Steepleton who regarded their purchases of tires at discounts as wholesale purchases.

The Wage-Hour Administrator adopted an Interpretive Bulletin in 1959 which undertook to implement the exemption provisions under Section 13 of the amended Act as applied to the tire industry. The Bulletin classified as wholesale, sales for resale, sales made pursuant to a formal invitation to bid, sales to national accounts and sales at discounts to customers operating five or more motor vehicles.

■ This Bulletin did not have the force and effect of a regulation and was not controlling upon the court. While not binding on the courts, such bulletins "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 U.S. 134 at 140, 65 S.Ct. 161, 164, 89 L. Ed. 124. See also Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 580 fn. 17, 62 S.Ct. 1216, 86 L.Ed. 1682.

Before the Bulletin was adopted and in an effort to assist the Wage-Hour Administrator in the formation of proper classifications of sales in the tire industry, the attorneys for the four major tire companies submitted to him a joint memorandum signed by them outlining the customs and practices and the two fold recognition of sales in the industry for more than 20 years. The attorneys conferred with representatives of the Administrator in Washington. Mr. Marsh also appeared before the Administrator and presented, orally and by written memoranda, the views of the National Tire Dealers and Retreaders Association with respect to the practices in the tire industry. These efforts turned out to be fruitless. Mr. Walter E. de Bruin, an attorney for Goodyear and Mr. Marsh both testified that the Interpretive Bulletin adopted by the Administrator did not conform to the recognition in the tire industry as to what constituted retail and wholesale sales, but merely continued the classifications adopted by the Administrator under the original Act prior to its amendment.

It is clear to us that commercial sales including "fleet sales," and sales to gov-

ernmental agencies made on invitations to bid were all regarded in the tire industry as retail sales.

With respect to sales to national accounts, they were made by the tire manufacturer and not the dealer. The manufacturer fixed the price, billed the customer, and made the collections. The dealer did not even know the price for which the tires were sold to the national account. The dealer's sole function was to make delivery out of his inventory of the tires sold by the manufacturer to the national account, which inventory was later replenished by the manufacturer who paid the dealer a commission for his service based on the dealer's cost. Bookkeeping entries of charges and credits did not change the true nature of the transaction in which the dealer acted merely as delivery agent for the manufacturer.

The District Court ruled that the Interpretive Bulletin adopted by the Administrator did not conform to the customary habits and practices recognized in the tire industry. In our opinion, this was the only conclusion the court could properly reach from the overwhelming evidence in this case. These habits and practices in the tire industry were not of recent origin nor were they adopted to avoid the provisions of the Act, but were traditional and existed for many years before the amendment was enacted.

Irrespective of whether or not the Interpretive Bulletin was valid, the burden of proof still remained on Steepleton to prove that it came within the requirements of the exemption provisions of the Act. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393. The District Court followed the rule in Arnold.

We think the burden was met. It was for the District Court to determine from all the evidence whether Steepleton was a retail and service establishment and exempt from the requirements of the Act by reason of Sections 13(a) (2) and (4). The District Judge made the factual determinations. Upon review of the record as a whole we are not convinced that the District Judge made any mistake in his findings of fact. In our judgment, they were not clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147. His conclusions of law were correct.

The judgment in each case is affirmed.