MITCHELL, SECRETARY OF LABOR, *v.* KENTUCKY FINANCE CO., INC., ET AL.

No. 161.   Argued March 3, 1959.—Decided April 20, 1959.

*Bessie Margolin* argued the cause for petitioner.   With her on the brief were *Solicitor General Rankin, Stuart Rothman* and *Sylvia S. Ellison.*

*Harold H. Levin* argued the cause for respondents. With him on the brief were *Frank A. Logan, Charles S. Kelly* and *Thomas S. Dawson.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner, the Secretary of Labor, brought suit to enjoin respondents from violating the overtime and record-keeping provisions of the Fair Labor Standards Act, 52 Stat. 1060, as amended, 29 U. S. C. § 201 *et seq.* Respondents, two closely affiliated subsidiaries of a common corporate parent, share an office in Louisville, Kentucky.   They are engaged in the business of making personal loans, in amounts up to $300, to individuals, and in purchasing conditional sales contracts from dealers in furniture and appliances.   Respondents share the services of a common manager and nine full-time and two part-time employees.

By pretrial stipulation and concessions at trial, respondents in effect conceded that an injunction should issue

unless their employees are exempted from the over-time and record-keeping provisions of the statute by § 13 (a)(2) thereof, which provides that such require-ments shall not apply to

> ". . . any employee employed by any retail or serv-ice establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; . . ."

As concededly more than 50 percent of respondents' loan and discount business is with Kentucky residents and none of it involves "resale" transactions, the sole question involved in this litigation is whether respondents should be considered as "retail or service establishment[s]," engaged in the making of "sales of goods or services," within the meaning of § 13 (a)(2). The burden is, of course, upon respondents to establish that they are entitled to the benefit of the § 13 exemption, since coverage apart from the exemption is admitted.

After trial the District Court found that respondents had not proved that they are a "retail or service estab-lishment" within the meaning of § 13 (a)(2), and issued an injunction restraining respondents from further vio-lating the Act. 150 F. Supp. 368. The Court of Appeals reversed. 254 F. 2d 8. We granted certiorari, 358 U. S. 811, to resolve the conflict between the decision of the court below and that of the Court of Appeals for the First Circuit in *Aetna Finance Co.* v. *Mitchell*, 247 F. 2d 190.

Until 1949, § 13 (a)(2) exempted from the overtime and record-keeping provisions of the Fair Labor Stand-

ards Act "Any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." The Administrator early ruled that personal loan companies and other business entities in what may broadly be called the "financial industry" were not within the scope of that exemption.[1] When Congress amended the Act in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the statute as amended. 63 Stat. 920. The narrow issue before us, then, is whether Congress in the 1949 amendment of § 13 (a)(2) broadened the scope of that section so as to embrace personal loan companies.

The present § 13 (a)(2) differs from its predecessor primarily in the addition of a definition of the term "retail or service establishment," such an establishment being one "75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; . . ." Respondents argue that they plainly come within this definition because (1) more than 75 percent of their loan and discount business is "not for resale," and (2) their activities are recognized in the financial industry as being the "retail end" of that industry. They claim that the intent of Congress in the 1949 amendment was to provide that "local" business was exempt from the overtime requirements of the statute, and that their activities are precisely the kind the § 13 exemption was designed to embrace.

We do not think the issue before us can be disposed of so simply. The Government points out that the concept of "sale" is inherently inapposite to the lending of money at interest, and urges that because respondents cannot

---

[1] Interpretative Bull. No. 6, 1942 WH Manual 326, ¶¶ 29–31. That ruling has been carried over under the amended version of § 13 (a)(2). 29 CFR, 1958 Supp , § 779.10.

properly be said to be engaged in the "sale of goods or services" the exemption cannot as to them come into play even if their activities are recognized as "retail" in the financial industry. Respondents concede that they are not engaged in the sale of "goods." but insist that their activities do constitute a "sale" of a "service" within the intendment of § 13 (a)(2), characterizing that "service" as credit or the use of money.[2]

This is not a case where perforce we must attempt to resolve a controversy as to the true meaning of equivocal statutory language unaided by any reliable extrinsic guide to legislative intention. On the contrary, the debates and reports in Congress with reference to this section of the statute are detailed and explicit. To those legislative materials we now turn.

The legislative history of the 1949 amendment to § 13 (a)(2) demonstrates beyond doubt that Congress was acting in implementation of a specific and particularized purpose. Before 1949 the Administrator, in interpreting the term "retail or service establishment," then nowhere defined in the statute, had, in addition to excluding from the coverage of the exemption personal loan companies and other financial institutions, ruled that a business enterprise generally would not qualify as such an establishment unless 75 percent of its receipts were derived from the sale of goods or services "to private persons to satisfy their personal wants," on the theory that sales for business use were "nonretail." [3] This administratively announced "business use" test was generally approved by this Court in *Roland Electrical Co.* v. *Walling,* 326 U. S. 657.

Congress was dissatisfied with this construction of the statute, and over the objection of the Administrator, who

---

[2] The term "service" is nowhere defined in the Fair Labor Standards Act.

[3] See Interpretative Bull. No. 6, 1942 WH Manual 326, ¶¶ 14, 18.

sought to have his "business use" test legislatively confirmed,[4] passed the 1949 amendment to § 13 (a)(2) to do away with the rule that sales to other than individual consumers could not qualify as retail in deciding whether a particular business enterprise was a "retail or service establishment," and to substitute a more flexible test, under which selling transactions would qualify as retail if they (1) did not involve "resale," and (2) were recognized in the particular industry as retail. We find nothing in the debates or reports which suggests that Congress intended by the amendment to broaden the fields of business enterprise to which the exemption would apply. Rather, it was time and again made plain that the amendment was intended to change the prior law only by making it possible for business enterprises otherwise eligible under existing concepts to achieve exemption even though more than 25 percent of their sales were to other than private individuals for personal consumption, provided those sales were not for resale and were recognized in the field or industry involved as retail.[5] Thus enter-

---

[4] The Administrator supported the so-called Lesinski bill, which would have adopted the Administrator's "business use" test in the definition of "retail or service establishment."

[5] See H. Conf. Rep., 95 Cong. Rec. 14931: "[§ 13 (a)(2)] . . . clarifies the existing exemption by defining the term 'retail or service establishment' and stating the conditions under which the exemption shall apply. This clarification is needed in order to obviate the sweeping ruling of the Administrator and the courts that no sale of goods or services for business use is retail. See Roland Electrical Co. v. Walling (326 U. S. 657); . . ."; Report of Majority of Senate Conferees, 95 Cong. Rec. 14877: "The conference agreement exempts establishments which are traditionally regarded as retail. . . ." See also the statement of Senator Holland, sponsor of the legislation in the Senate: "The only substantial difference between the Administrator and his recommendation [which would have written the "business use" test into the statute] and the amendment which we propose is that we propose to do away with this artificial distinction between a retail sale on the one hand and

prises in the financial field, none of which had previously been considered to qualify for the exemption regardless of the class of persons with which they dealt, and regardless of whether they were thought of in the financial industry as engaged in "retail financing," remained unaffected by the amendment of § 13 (a)(2).

Any residual doubt on this score is dispelled by the explicit and repeated statements of the sponsors of the amendatory legislation and in the House and Senate Reports to the effect that "The amendment does not exempt banks, insurance companies, building and loan associations, *credit companies,* newspapers, telephone companies, gas and electric utility companies, telegraph companies, etc., because there is no concept of retail selling or servicing in these industries. Where it was intended that such businesses have an exemption one was specifically provided by the law . . . ." [6] (Emphasis added.) It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed. *A. H. Phillips, Inc.,* v. *Walling,* 324 U. S. 490, 493; see also

---

a business sale on the other . . . ." 95 Cong. Rec. 12498. For other authoritative expressions of the legislative intent in this regard, see 95 Cong. Rec. 11115–11116, 12492–12493, 12496, 12502, 12506, 12508.

[6] H. R. Conf. Rep., 95 Cong. Rec. 14932. See also Report of Majority of Senate Conferees, 95 Cong. Rec. 14877; statement of Senator Holland, 95 Cong. Rec. 12505–12506.

Respondents urge that statements of this kind have no application to them because they are not "credit companies," in that such term properly is to be restricted to commercial credit companies. We agree with the observation of the Court of Appeals in *Aetna Finance Co.* v. *Mitchell, supra,* at 193, that this contention is "quite unconvincing." There is nothing which indicates that Congress was using the term "credit companies" in any specialized sense, and indeed one of respondents' own expert witnesses testified that personal loan companies are "credit institutions." We think it clear that the House and Senate Conferees used "credit companies" to mean nothing more nor less than companies which deal in credit, as respondents concededly do.

*Powell* v. *United States Cartridge Co.,* 339 U. S. 497, 517 In the light of the abundant pointed evidence that Congress did not intend that businesses like those of respondents be exempted from the overtime and record-keeping provisions of the statute by § 13 (a)(2), we would not be justified in straining to bring respondents' activities within the literal words of the exemption.

*Reversed.*

MR. JUSTICE STEWART took no part in the consideration or decision of this case.