Dean NORMAN, James Lawrence and Gene Owen, Appellants,

v.

Charles MOSELEY d/b/a Moseley's Cabinet Shop, Appellee.

No. 17136.

United States Court of Appeals Eighth Circuit.

Feb. 21, 1963.

E. W. Brockman, Jr., Pine Bluff, Ark., for appellants.

E. Harley Cox, Jr., Pine Bluff, Ark., Coleman, Gantt & Ramsay, Pine Bluff, Ark., on the brief, for appellee.

Jacob I. Karro, Attorney, Dept. of Labor, Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Miss Beate Bloche, Attorney, U. S. Dept. of Labor, Washington, D. C., and Earl Street, Regional Attorney, U. S. Dept. of Labor, Dallas, Tex., on the brief, for Secretary of Labor as amicus curiae.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

The plaintiffs (appellants) brought this action April 6, 1961, under § 16(b) of the Fair Labor Standards Act of 1938, as amended,[1] 29 U.S.C. § 216(b), to re-

1. Ch. 676, 52 Stat. 1060, as amended by the Fair Labor Standards Amendments of 1949, Ch. 736, 63 Stat. 910; 29 U.S.C. § 201 et seq.

cover (with liquidated damages and attorney's fee) unpaid overtime compensation alleged to be due them under § 7 of the Act, 29 U.S.C. § 207, for labor performed in the production of goods for interstate commerce while in the employ of the defendant (appellee) during the period April 6, 1959, to March 11, 1961. The defendant denied any liability to them for overtime compensation. The case was tried to the District Court. It determined that the defendant was exempt under § 13(a) of the Act,[2] 29 U.S.C. § 213(a), from the overtime requirements of the Act, and dismissed the complaint. The plaintiffs have appealed. They contend that the determination on which the dismissal was based was clearly erroneous.

During the period in suit, the defendant operated a small woodworking or cabinet shop in Pine Bluff, Arkansas, with an annual sales volume of approximately $100,000. He was primarily engaged in making and selling built-in cabinets for residential housing. The cabinets were sold in the Pine Bluff area to individual homeowners for installation in existing homes and to building contractors for installation in houses they were building. The materials out of which the cabinets were constructed were obtained in Arkansas. The defendant also sold locally plywood, hardware and related materials. In certain weeks during the period involved, the defendant, as a side line, manufactured to specifications what are referred to as sticks and molds for the Central Transformer Corporation of Pine Bluff, which were used for making cores for electric transformers used in interstate commerce. The plaintiffs, as employees of the defendant, were engaged in the production of all articles made in his cabinet shop, including sticks and molds. They worked overtime during some weeks without receiving overtime compensation.

The defendant, in selling cabinets to building contractors for installation in houses under construction (a "big volume of business for his shop"), submitted bids, and made, delivered and installed the cabinets contracted for. The plaintiffs contended that the defendant was a subcontractor making and installing cabinets for the prime contractor. The District Court determined that the defendant dealt with the contractors as a seller of goods who delivered and installed the goods he sold, and that the sales of cabinets were "retail sales" within the meaning of § 13(a) of the Act. The District Court also determined that the cabinets were not purchased by the contractors for resale, in view of § 3(n) of the Act,[3] 29 U.S.C. § 203(n), which provides:

"'Resale' shall not include the sale of goods to be used in residential or farm building construction, repair, or maintenance: *Provided,* That the sale is recognized as a bona fide retail sale in the industry."

The Supreme Court, in Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, pages 391, 392, 393, 80 S.Ct. 453, pages 455, 456, 4

2. 63 Stat. 917, § 13(a):
"The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry: * * * or (4)

any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided,* That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; * * *."

3. 63 Stat. 911.

L.Ed.2d 393, which arose out of a fairly similar state of facts, said:

"Petitioner [plaintiff employee] admittedly is engaged in the manufacture of phenolic parts for commerce. That this activity may be considered a 'sideline' from respondent's [employer's] viewpoint does not remove petitioner from coverage under the Fair Labor Standards Act unless the respondent's activities fall within the specific exemptions enumerated in § 13 of the Act. As originally passed in 1938, the Fair Labor Standards Act exempted from coverage 'any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce.' In 1949 Congress substituted a three-part definition for this provision. Any employee employed by a retail or service establishment is to be exempt if more than 50% of the establishment's annual dollar volume of sales is made within the State, if 75% of its annual sales volume is not for resale, and if 75% of its annual sales volume is recognized within the industry as retail sales.

\* \* \* \* \* \*

"While § 13(a) (2) contains the requirements every retail establishment must satisfy to qualify for exemption, a retailer-manufacturer must satisfy the additional requirements of § 13(a) (4) since it 'makes or processes' the goods it sells.

"Turning to the facts of this case, it is clear that respondent, through its fabrication of phenolic parts, is 'making or processing the goods that it sells.' To gain exemption it therefore must comply with the criteria of § 13(a) (2) as they are incorporated by reference in § 13(a) (4), as well as the additional requirements of § 13(a) (4) itself. \* \* \*"

In conclusion, the Supreme Court said (page 394, 80 S.Ct. page 457):

"Since respondent has not sustained its burden of proving that 75% of its annual sales volume is not for resale and is recognized as being retail in the particular industry, we need not reach the question whether the additional standards of § 13(a) (4) itself are met.

"We hold that respondent has not satisfied the requirements of § 13 and is not entitled to exemption thereunder. \* \* \*"

■ The evidence in the instant case shows that the "side line" of the defendant (the making of sticks and molds) accounted for far less than one-half of his total sales in each of the years involved, and that more than 50% of his annual dollar volume of sales or services was intrastate. The defendant claims that he produced substantial evidence from which it reasonably could be inferred that 75% of his annual sales volume was not for resale, in view of § 3 (n) of the Act, and that he qualifies for exemption as a retailer-manufacturer under § 13(a) (4).

Included in the District Court's "Findings of Fact" is the following:

"6. On the issue of exemption the burden was upon the defendant to show by a preponderance of the evidence that his establishment was exempt under the provisions of the Act just mentioned. Specifically, the defendant was required to establish by the requisite degree of proof all of the following things:

"(a) That more than 50 percent of his annual volume of sales of goods or services was made in Arkansas.

"(b) That 75 percent of his annual dollar volume of sales of goods or services (or of both) was not for 'resale' and was recognized 'as retail sales or services' in the industry in which defendant's establishment was included.

"(c) That defendant's establishment was recognized in the industry 'as a retail establishment.'

"(d) That more than 85 percent of defendant's annual dollar

volume of sales of goods manufactured by him was made in Arkansas.

"7. The Court finds that the defendant has discharged his burden of proof with respect to the issue of exemption, and that during the period in question defendant's establishment was an exempt retail establishment within the meaning of the law."

The plaintiffs argue (1) that the defendant did not prove that "the goods manufactured by the Moseley Cabinet Shop were made and processed at the establishment known as Moseley Cabinet Shop, which allegedly sold the goods"; (2) that he did not prove that "at least 75% of the total sales of the cabinet shop were recognized as retail sales and not for resale"; and (3) that he "did not discharge the burden of proving the cabinet shop is a retail establishment."

In a concise and helpful brief filed by the Secretary of Labor, as *amicus curiae,* he attacks the sufficiency of the defendant's evidence to show that 75% of the dollar volume of sales "was not for resale" and to show that the sales were "recognized as retail sales * * in the particular industry." It is true that the evidence is not as clear-cut, specific, and precise as it should have been, in view of the fact that the exemptions of § 13 of the Act are "to be narrowly construed against the employers seeking to assert them" and "limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., supra, page 392 of 361 U.S., page 456 of 80 S. Ct.; Mitchell v. Kentucky Finance Co., Inc., 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815.

We think, however, that there was sufficient evidence from which the trial court reasonably could infer, as it did, that the defendant's proof met the requirements of § 13(a)(2) and brought him within the exemption which he claimed.

The defendant testified that he considered his business "as a retail operation." Robert L. Carty, of Fort Smith, Arkansas, a cabinet-maker and former employee of the defendant, testified that in his opinion "the Moseley Cabinet Shop and similar operations in the industry are considered as retail business." Gene Owen, one of the plaintiffs, testified that he "is in the same type of business as Mr. Moseley which is a retail business." John H. Turley, of Pine Bluff, a building contractor, testified that he was "familiar with the business known as the Moseley Cabinet Shop" and considered it a retail business. Ray Stewart, of Pine Bluff, the manager of a building supply company, testified that his place of business is next door to the Moseley Cabinet Shop, and that in his opinion the Moseley Cabinet Shop would be "classed as a retail sales outlet." Harold Dunlap, of Pine Bluff, office manager for the Standard Lumber Company, testified that in his opinion "the Moseley Cabinet Shop is known in the industry as a retail operation."

It is argued that the trial court was not justified in relying on § 3(n) of the Act in determining that the defendant's sales of cabinets to contractors for use in residential construction were not for "resale", since the defendant had failed to prove that such a sale was "recognized as a bona fide retail sale in the industry." The trial court was, we think, justified in inferring from the evidence that the sales the defendant made to contractors during the period in suit were "recognized as bona fide retail sales in the industry," although that exact language was not used by any witness.

It is our conclusion that the determination of the trial court that the defendant sustained his burden of proof respecting his claim that his establishment was an exempt retail establishment has not been shown to be clearly erroneous.

The judgment appealed from is affirmed.