George P. SCHULTZ, Secretary of Labor, United States Department of Labor,

v.

CROTTY BROTHERS DALLAS, INC., Crotty Brothers Texas, Inc., Crotty Brothers Boston, Inc., Crotty Brothers, Inc., and American News Company.

Civ. A. No. 68–CA–6.

United States District Court
W. D. Texas,
Austin Division.

July 30, 1969.

Truett E. Bean, Trial Atty., Dept. of Labor, Dallas, Tex., for plaintiff.

Warren Whitham, Stafford, Freedman, Hamlin, Gay & Whitham, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

This is an action brought by the Secretary of Labor to enjoin the defendants from violating the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act, including restraints against any further withholding of the payments of minimum wage and overtime compensation owing to the defendants' employees.

It has been stipulated that the activities of the defendants, consisting of the ownership, management and operation of food service activities, are related activities and have been performed under common control for a common business purpose. The defendants' business operations have constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s) (3) of the Act prior to February 1, 1967 and within the meaning of section 3(s) (1) subsequent to February 1, 1967. Ordinarily, this would subject the defendant to the minimum wage and overtime requirements of the Act.

The particular food service operation in question concerns that one managed by the defendant Crotty Brothers Dallas, Inc. at St. Stephen's Episcopal School near the city of Austin, Travis County, Texas. The defendants assert that this operation constitutes a retail establishment, and therefore, they are exempt from the minimum wage and overtime provisions under § 13(a) (2). The defendants have asserted other exemptions under the Act; but since all of these other exemptions depend upon whether the food service operation at St. Stephen's was a retail establishment, it will be unnecessary to discuss these other exemptions and concentrate only upon the question of the retail establishment.

The defendant has maintained this food service operation pursuant to a formal contract with St. Stephen's. The contract provides that Crotty Brothers Dallas, Inc., will prepare and serve three meals daily during the school year to the faculty, students and others who are authorized by St. Stephen's to use the dining hall facilities, and at such other times during the school year as St. Stephen's may require. The operating policy of Crotty and the hours of service are subject to the approval of the school.

The school is to furnish all equipment, the various utilities, telephone service and garbage removal service; it is also to furnish all plumbing, steamfitting, carpentry, and electrical work necessary for Crotty's activities.

Crotty assumes sole responsibility in all matters of hiring help, paying salaries, purchase of merchandise, various supplies, and other incidentals connected with the conduct of its activities and control of its employees. However, if any of Crotty's employees become unsatisfactory to St. Stephen's, then Crotty is to dismiss such employee upon notice from St. Stephen's.

The school reimburses Crotty for all costs incurred, except for home office,

overhead, and federal income taxes, plus a fee of $750 per month. The students are charged for tuition, room, and board.

Mr. Galvin of the National Restaurant Association and Mr. Price of the Texas Restaurant Association both testified that the sales were retail and were recognized as retail in the food service industry. And establishments where meals can be obtained at industrial plants, office buildings, railroad depots, government installations, government parks, hospitals, mining camps, and schools and colleges (caterers, cafeterias, commissary restaurants and restaurants) are classified as retail establishments in the Standard Industrial Classification Manual 1967 prepared by the Office of Statistical Standards, Executive Office of the President, Bureau of the Budget, United States of America, p. 250.

The gross sales at St. Stephen's has been less than $250,000 per year from 1966 through 1968. The principal issue, then, is whether the food service operation at St. Stephen's can qualify as a retail establishment under § 13(a) (2).

When the Act was passed in 1938, Congress simply provided that retail establishments, which sold the greater part of their goods or services in intrastate commerce, would not have to pay the minimum wage or overtime compensation. The term retail was not defined until 1949, when it was then defined as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C.A. § 213(a) (2).

■ However, to determine if a certain establishment is retail, it is necessary to go beyond the wording of the statute, because Congress has declared that certain businesses could never qualify as retail due to a lack of any retail concept in that business. 2 United States Code Congressional Service, p. 2265 (81st Cong., 1st Sess., 1949). Furthermore, whether a certain business is recognized as retail is not determined simply by industry recognition.

Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959).

In determining whether a food service operation, such as the defendant's, is a retail establishment, it is necessary to consider McComb v. Factory Stores Co., 81 F.Supp. 403 (N.D.Ohio, 1948), the 1949 amendments to the Act, and the legislative history behind those amendments. In the *Factory Stores* case, the defendant operated canteens, cafeterias, and restaurants on the premises of Republic Steel Corporation. The contract between Republic and Factory Stores obligated the latter to operate a general catering business for the employees of Republic at such locations in the various plants as Republic designated or required; the contract also related to the quality and price of the food. Republic furnished the land on which the units were placed in operation and paid for the original installations as well as the supplying of utilities. The defendant paid certain rentals, based upon a percentage of the gross receipts from the various canteens; however, there was no rental payment provided for the office cafeteria. The employees were furnished coupon trade books with which to make purchases at the canteens; Republic deducted from the wages of the employees payment for the coupon trade books and remitted the money to the defendant.

The plant itself was enclosed by fences, and a company rule prohibited the production workers from leaving the premises during work. And even if the workers were permitted to leave the plant during their lunch break, it would have been almost impossible for them to do so since the plant was located in a large industrial area and the workers were given only fifteen to thirty minutes off for lunch. It was obvious then that there was a great need for these industrial cafeterias.

Aside from a few casual patrons of the canteens, the defendant catered solely to the 7,000 workers of Republic. Guards were stationed at the various gates to

prevent the entrance of the general public to the plant.

In defense to a suit brought to enforce the minimum wage and overtime requirements of the Act, the defendant asserted: (1) that he was not covered by the Act, and; (2) that his business was exempt as a retail establishment. The district court held that since the defendant's food service operations greatly increased the efficiency of Republic's employees, then the defendant's employees were covered by the Act as being engaged in an occupation necessary for the production of goods. Relying on Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946), the court also denied the defendant the retail exemption on the basis that the above coverage precluded any such exemption. The Supreme Court in the *Roland* case held that no sale of any article for business or profit-making use as opposed to personal consumption could qualify as a retail sale.

In 1949 Congress amended the Act so as to narrow the coverage and to clarify the retail exemption. The legislative history behind these amendments clearly shows that Congress intended to overrule the above cases as well as a number of other related cases. 2 United States Code Congressional Service, pp. 2252–54, 2264 (81st Cong., 1st Sess., 1949):

"* * * Coverage of the act has also been extended to employees of an independently owned and operated restaurant located in a factory (McComb v. Factory Stores, 81 F.Supp. 403 (N.D.Ohio 1948)).

"Under the bill as agreed to in conference an employee will not be covered unless he is shown to have a closer and a more direct relationship to the producing, manufacturing, etc., activity than was true in the above-cited cases." P. 2253.

"The amendment (sec. 13(a) (2) ), agreed to in conference clarifies the existing exemption by defining the term 'retail or service establishment' and stating the conditions under which

the exemption shall apply. This clarification is needed in order to obviate the sweeping ruling of the Administrator and the courts that no sale of goods or services for business is retail. See Roland Electrical Co. v. Walling (326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383); * * * McComb v. Factory Stores (81 F.Supp. 403 (N.D. Ohio 1948))." Pp. 2263, 2264.

The *Factory Stores* case was remanded in light of the above amendments. 179 F.2d 238 (6 Cir. 1949).

In 1961 Congress again amended the retail exemption provisions, and the House Managers report which accompanied these amendments contained the following relevant statements:

"An exemption is also provided * * for employees of a retail or service establishment employed primarily in connection with the preparation or offering of food for human consumption on the premises or by such services as catering, banquet, box lunch, or curb or counter service, to the public, to employees, or to members or guests of members of clubs. Clauses (2) and [(20)] of section 13(a) also are intended to continue the exemption for independently owned and operated restaurants in industrial plants, office buildings, Government installations, hospitals, or colleges, such as were involved in McComb v. Factory Stores (81 F.Supp. 403 (1948))." 2 U.S.Code Congressional and Administrative News, p. 1647 (87th Cong., 1st Sess., 1961).

The Secretary has incorporated the above sentence into his own regulations. 29 C.F.R. § 779.389. Furthermore, according to the Secretary's own regulations, a retail or service establishment "performs a function in the business organization of the nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. Such an establishment sells to the general public its food and drink." 29 C.F.R. § 779.-

318. A retailer usually sells goods or services frequently required for family use. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 203, 86 S.Ct. 737, 15 L.Ed. 2d 694 (1965). Retailers stand in direct contract to wholesalers who usually exclude the general consuming public as a matter of established business policy and confine their sales to other wholesalers, retailers, and industrial or business purchasers. 29 C.F.R. § 779.327.

The conclusion then is that the defendant's business should qualify as a retail establishment. In fact situations very similar to this case, two district courts held that the food service operations were retail. Wirtz v. Pickett Food Service, Inc. (N.M.1968), 304 F.Supp. 784; Wirtz v. Campus Chefs, Inc., (N.D.Ga. 1968), 303 F.Supp. 1112.

However, in the case of Mitchell v. Anderson, 235 F.2d 638 (8th Cir. 1955), a lodging and food service contractor was denied the retail exemption. That case though is factually distinguishable from this one. In *Anderson* the Court of Appeals found that if it had not been for the lodging and food supplied by the contractor, then the Anaconda Copper Mining Co. would have been extremely hampered in procuring help since the mine was so far removed from any cities. Therefore, the court concluded that the defendant's employees were engaged in an occupation directly essential to the production of goods. And that is why the retail exemption was denied. It could hardly be argued here that Crotty's employees were engaged in an occupation directly essential to the production of goods. Also, according to the strong dissenting opinion, there is substantial doubt as to the correctness of that decision.

The Secretary has argued that the defendants, as well as the two district courts in the *Pickett Food Service* case and the *Campus Chefs* case, have misread the *Factory Stores* case and the legislative history behind the 1949 and 1961 amendments, thus confusing the principles of coverage and exemption. The Secretary has argued that only the principle of exemption is involved in this case, whereas the *Factory Stores* case cited and the legislative history cited deal only with coverage. This court disagrees.

A reading of the *Factory Stores* case will reveal that both the principle of coverage and exemption were involved. The district court in that case held that the defendant was not entitled to the retail exemption because his employees were covered by the Act in that they were engaged in an occupation necessary to the production of goods. A reading of the legislative history behind the 1949 amendments shows that Congress narrowed the coverage and clarified the retail establishment exemption so that businesses like that involved in *Factory Stores* could avail themselves of the retail exemption.

It is interesting to note that on page 9 of the plaintiff's reply brief he states the following: "Whether or not an activity is directly essential to the production of goods for commerce does not determine one way or the other whether the retail exemptions are applicable." However, on page 10 of the plaintiff's original brief, it is stated that the case of Mitchell v. Anderson, *supra,* is "particularly helpful here." The Court of Appeals in that case held that the defendant's employees were engaged in an occupation directly essential to the production of goods and that "such conclusion is inconsistent with any conclusion that it is a retail enterprise." p. 642. The plaintiff's own cited authorities contradict him.

Even in light of the legislative history cited, the Secretary has contended that the defendant's operation is not a retail establishment because: (1) it was not a physically separate establishment, and it was not separate and independent from the school; (2) the defendant was providing a business service to the school; (3) the defendant's food service operations were not open to the general public.

The first argument is not valid because (a) it is not necessary that the business be physically separated, 29 C.F.

R. § 779.319; 2 U.S.Code Congressional Service, p. 2265 (81st Cong., 1st Sess., 1949), and; (b) the business is in fact independent from the school. The defendant had the sole responsibility for preparing the food and was in charge of its employees. The fact that the defendant's operating policy was subject to the school's approval and that the defendant would have to discharge an obnoxious or unsatisfactory employee does not make the defendant's business integrated with the school. Such contractual provisions are entirely reasonable under the circumstances; furthermore they are consistent with the idea of an independent food service contractor operating in another institution.

■■ It is doubtful that the second argument is even applicable to the facts of this case. None of the cases the Secretary cites to sustain its argument involve food service operations, but rather they involve services that the ordinary individual would never purchase, which is not the case here. Furthermore, the legislative history clearly shows that a retail sale is still retail even if purchased by business rather than an individual. 2 U.S.Code Congressional Service, p. 2264 (81st Cong., 1st Sess., 1949); Idaho Metal Works v. Wirtz, supra. Finally, it is primarily the students who pay for these meals and who are serviced by the defendant; the school benefits only indirectly from these services.

■ If the exclusion of the general public in the Factory Stores case was not enough to keep Congress from referring to those food service operations as retail, then the Secretary's third argument should also fail. This same argument was asserted in the Pickett Food Service case and the Campus Chefs case; both district courts rejected the argument. Besides, the students are part of the general public. If the Secretary's argument were to prevail, then the "countless restaurant operations located in 'industrial plants, office buildings, Government installations, hospitals and colleges' would lose their status simply because of a factually restricted clientele." Wirtz v. Campus Chefs, Inc., supra. The exclusion of the general public is characteristic of wholesale establishments. 29 C.F.R. § 779.327. And this problem of exclusion of the general public usually arises in trying to determine whether a particular establishment is retail or wholesale. It is not even suggested here that the defendant's establishment is wholesale.

■ The Secretary has argued that even if the defendant's establishment were retail under ordinary circumstances, the defendant would still not be entitled to the exemption in this case since there was a resale of the food. The Secretary has contended that the school buys the food from the defendant and then resells it to the students or their parents. This very same argument was asserted in the Campus Chefs case under very similar circumstances, and it was rejected by that court. This court feels that this argument should again be rejected for substantially the same reasons. It is difficult to understand how the Secretary can argue that a resale has occurred when St. Stephen's never acquires any right, title or interest in the food. It is true that the money passes from the students' parents through the school to the defendant. But this is more a matter of convenience and should not be used as a basis for holding a resale has occurred.

The Secretary cited Mitchell v. Sherry Corine Corp., 264 F.2d 831 (4th Cir. 1959) and Goldberg v. Warren G. Kleban Engineering Corp., 303 F.2d 855 (5th Cir. 1962) in support of his argument that a resale has occurred. Both of those cases, however, are easily distinguishable from the case at bar. In both Sherry and Kleban, the defendants transferred both possession and ownership of the products to a third party who in turn sold and transferred the products to the ultimate buyer. Such is not the case here.

■ The conclusion to be drawn then is that the defendants' food service op-

eration at St. Stephen's is a retail establishment within the meaning of § 13(a) (2) (1961) and § 13(a) (2) (1966) of the Fair Labor Standards Act. Since the gross sales of the defendant has been less than $250,000 since January 1, 1966, the defendant is entitled to the exemption and judgment is therefore entered in favor of the defendant.

It is so ordered.