James D. HODGSON, Secretary of Labor, United States Department of Labor

v.

J. W. LYLES, INC., a corporation, trading as Transitruck Center, and Transit Truck Stop, Inc., a corporation.

Civ. No. 19813.

United States District Court,
D. Maryland.

Dec. 16, 1971.

Marshall H. Harris, Deputy Regional Sol., Dept. of Labor (Peter G. Nash, Sol. of Labor, Louis Weiner, Regional Sol. and Michael D. Shapiro, atty., Philadelphia, Pa.), for plaintiff.

H. Russell Smouse and Clapp, Somerville, Black & Honemann, Baltimore, Md., and Samuel L. Bare, III, and Muller, Schenerlein & Bare, Miami, Fla., for defendants.

THOMSEN, District Judge.

In this action brought by the Secretary of Labor to restrain the two corporate defendants from alleged violations of the Fair Labor Standards Act, only one question remains for decision: whether during the years before February 1, 1967, the "truck stops" operated by defendants were "gasoline service stations" within the meaning of § 13(b)(8) of the Act as amended in 1961, Title 29 U.S.C.A. (1965 ed.), § 213(b) (8), and as such exempt from the "overtime" provisions of § 7 during those years. For reasons stated below, such an exemption would also affect subsequent years.

### Contentions of the Parties

Plaintiff claims that defendants constitute an "enterprise", as that term is defined in § 3(r)[1] in both the 1961 and 1966 amendments, which was engaged in commerce within § 3(s) (3) of the Act as amended in 1961[2] and § 3(s) (1) of the Act as amended in 1966,[3] and, therefore, that each defendant was subject to the maximum hours (overtime) provisions of § 7[4] as well as the minimum wage provisions of § 6,[5] to which they were admittedly subject.

Defendants contend that the controlling subsection is not § 3(s) (3), but is § 3(s) (5) of the Act (as amended in 1961) which deals with "gasoline service establishments". They further contend that they are "gasoline service stations" within the meaning of § 13(b) (8) of the Act as amended in 1961,[6] and as such are exempt from the maximum hours (overtime) provisions of § 7.

The "gasoline service station" exemption, upon which defendants rely, was eliminated from the Act by the 1966 amendments. P.L. 89–601, 29 U.S.C.A. (1971 pocket part), § 213, which became effective February 1, 1967; but the 1966 amendments contained special provisions for those who were first brought

1. 29 U.S.C.A. § 203(r) in both the 1965 edition and the 1971 pocket part.

2. 29 U.S.C.A. (1965 ed.), § 203(s) (3).

3. 29 U.S.C.A. (1971 pocket part), § 203 (s) (1). The 1966 amendments became effective February 1, 1967.

4. 29 U.S.C.A. § 207 in both the 1965 edition and the 1971 pocket part.

5. 29 U.S.C.A. § 206 in both the 1965 edition and the 1971 pocket part.

6. 29 U.S.C.A. (1965 ed.), § 213(b) (8).

within the purview of § 7(a) by the 1966 amendments. 29 U.S.C.A. (1971 pocket part), § 207(a) (2).

If defendants were entitled to the "gasoline service station" exemption before February 1, 1967, they are not liable for any overtime, because they have complied with the provisions of the 1966 amendment applicable to those who were first brought within the purview of § 7(a) by the 1966 amendments.

On the other hand, if defendants were not entitled to the "gasoline service station" exemption during the years 1961–1966, (1) they failed to comply with the overtime provisions of the 1961 amendments during the period from August 21, 1966 (before which any claim is barred by limitations) to January 31, 1967, and (2) failed during the period from February 1, 1967, until July 12, 1968, to comply fully with the provisions of § 7 of the Act as amended in 1966.

Defendants have complied fully with the overtime provisions of the Act since July 12, 1968, and have always complied with the minimum wage provisions. The parties have stipulated that if defendants are liable, overtime wages are due employees of Transitruck Center in the amount of $5,780.68 and employees of Transit Truck Stop, Inc., in the amount of $12,482.33.

### Facts

At all material times defendants constituted one "enterprise" within the meaning of § 3(r), and operated two "truck stops", Transitruck Center, at Laurel, Md., on U. S. 1, and Transit Truck Stop, Inc., at Millersville, Md. on U. S. 301.

The ratio of diesel fuel to gasoline sold at the Millersville location was 12 to 1; at Laurel it was 2 to 1. Each station had one more diesel fuel pump than gasoline pump.[7]

Almost all of the fuel—diesel or gasoline—at each location was sold to interstate trucks. At each location a small amount of gasoline was sold for use in truck company cars and to individual operators of passenger cars who occasionally stopped for service.[8] They were not turned away, but trucks were served first.

The type of charge ticket was different from that used at ordinary gasoline service stations,[9] but Texaco credit cards were honored as well as those of the National Truckers Service.

Nearly 300 truck fleets had charge accounts, and some 20 (accounting for about 3% of the total volume) were given fleet discounts.

At both locations defendants operated tire repair cages for truck tires, none for passenger car tires.

At Millersville, ice was sold in 300 lb. blocks to trucks for refrigeration purposes. At both locations scales for weighing trucks were provided,[10] with a large sign "SCALES" illuminated at night.

Defendants furnished some road service for trucks, none for automobiles.

At each location defendants maintained rooms and dormitories, with a full time janitor, for truck drivers desiring overnight accommodations, and large parking areas for their trucks. As many as 60 to 70 trucks parked there on weekday nights. Clothing, toilet articles, self-installable truck lights, and other truck accessories were sold in both offices.

At each location lessees of defendants operated garages and restaurants which were integral parts of the facility. The

---

7. In order to service trucks, all their pump islands are higher and have longer pump hoses than at ordinary gasoline service stations.

8. Two or three times a shift.

9. The fuel pumps showed neither the cost of the fuel per gallon nor the total amount of the sale.

10. The States surrounding Maryland had varying weight limits.

garages had equipment to repair trucks, but not the usual equipment to repair automobiles.

Defendants' expert witness, an official of the National Association of Truck Stop Operators, stated that at each location sufficient services were available to qualify the establishment as a "full-facility truck stop".

At one time there was a "Trucks Only" sign at Millersville; what happened to it is not clear from the evidence.

The capital investment at each of the truck stops was substantially greater than would have been necessary for an ordinary gasoline service station.

The peak periods of business at each location was determined by normal truck operations, and included the early morning hours after 2.00 a. m.

Certain employees at each location performed specific jobs (such as tire-repairing, janitorial work, cashiering and billing) almost exclusively. Other employees normally performed a variety of tasks.

*Discussion*

The employer has the burden of proving that his employees are exempt from the wage and hours provisions of the Fair Labor Standards Act.[11]

The exemptions in § 13 of the Act "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit". Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); see also Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295, 79 S.Ct.

756, 3 L.Ed.2d 815 (1959); Snell v. Quality Mobile Home Brokers, Inc., 424 F.2d 233, 235 (4 Cir. 1970). "Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress". A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945).

The "gasoline service station" exemption, provided by § 13(b) (8) of the 1961 amendments, was based upon the character of the establishment. In this respect it differed from certain other exemptions, which were based upon the nature of the duties performed by the individual employees. Compare § 13(b) (8) with, e. g., § 13(b) (5), (6), (9) and (11). See also § 13(b) (7), which is like (8).

The facts show clearly that the truck stops with which we are dealing in this case offered many services seldom or never offered at ordinary gasoline service stations. Defendants' operations were geared to the needs of interstate truckers, to whom defendants catered.

The only material legislative history cited or found is contained in the Report of the Senate Committee on Labor and Public Welfare on the Fair Labor Standards Amendments of 1961, which stated, at p. 32.

"6. *Gasoline service stations*

"Section 3(s) (5) brings under the act any gasoline service station which has an annual gross volume of sales of $250,000 or more. It should be noted that with respect to gasoline service establishments, the test applies to each separate establishment. This

---

11. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206, 86 S.Ct. 737, 15 L.Ed.2d 694, reh. den., 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305 (1966); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); Walling v. General Industries Co., 330 U.S. 545, 547–548, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); Wirtz v. Keystone Readers Service, Inc., 418 F.2d 249, 257 (5 Cir. 1969).

would be true whether the establishment is part of a chain operation or whether it is independently owned.

"The provision in section 3(s) (5) dealing specifically with gasoline service 'establishments' takes them out of the category of section 3(s) (1) which applies on an 'enterprise' basis.

"Employees of gasoline service stations or establishments that will be covered under the act for the first time will receive minimum wage rates on the same basis as retail and service enterprise employees referred to above. The provision in the new section 13(b) (8) will exempt any employee of a gasoline service station from the overtime requirements of the act.

"Although the term 'gasoline service establishment' is used in section 3(s) (5), and the term 'gasoline service station' in section 13(b) (8), no difference in application is intended. A gasoline service station or establishment is one which is engaged primarily in selling gasoline and lubricating oils. It may also sell other merchandise or perform minor repair work as an incidental part of the business."

Senate Report No. 145, April 12, 1961, 2 U.S.C.Cong. & Adm.News, pp. 1620, 1651, 87th Cong., 1st Sess. (1961).

At neither location was the establishment one which was engaged primarily in selling gasoline and lubricating oils. The other services furnished by defendants were more than an incidental part of their business.

Defendants stress two cases which deal with the "gasoline service station" exemption, namely, Harlow v. Bud Lake Truck & Car Stop, Inc., 261 F.Supp. 191 (D.Mont.1966); Shultz v. Southern "500" Industries, 19 W.H.Cas. 139 (M. D.N.C.1969).

*Bud Lake* was apparently decided on the assumption that the employer would have been entitled to the "retail or service establishment" exemption of § 13(a) (2) unless it was a "gasoline service establishment". Doubt has been thrown on that assumption by Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 202, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). The Secretary has construed *Idaho Sheet Metal Works* to indicate that such establishments as we are dealing with here "are an integral part of the interstate transportation industry and are not within the traditional retail concept". 29 C.F.R. § 779.371(c) (6) and (7). That point was not argued by either side in our case, perhaps because the annual volume of sales at the enterprise involved herein exceeded $1,000,000.

*Shultz* followed *Bud Lake*, refusing to make a distinction between stations selling principally diesel fuel and those selling gasoline. The other factors which seem important to this Court and to the Secretary were not discussed.

■ With all respect for the conclusions which those judges reached, on the facts and law presented to them, this Court cannot accept their decisions as controlling herein. The facts of this case, the statute, the legislative history and the applicable legal principles, discussed above, compel this Court to conclude that defendants herein were not entitled to the "gasoline service station" exemption provided by § 13(b) (8) of the Act, as amended in 1961.

Judgment will be entered in favor of plaintiff against the defendants. Counsel should agree upon a proper judgment order.