DECISION
This matter is before the Court on appeal from a decision of the Department of Labor and Training ("DLT"). Wendy Clark (hereinafter, "Clark" "Complainant" or "Employee") filed a complaint with DLT (Division of Labor Standards), complaining that as an hourly employee of Commerce Park Realty, (hereinafter, "Appellant", "Commerce" or Employer") alleging she was unpaid for overtime hours including Sundays worked in accordance with R.I. Gen. Laws 28-12-4.1, and 25-3-3. Two days of hearings were held before a hearing officer at the DLT. After hearing testimony and reviewing documentary evidence, the hearing officer found that Clark was due $13,887.47 for unpaid overtime of 433 hours. This appeal followed pursuant to G.L. 42-35-15.
 Facts and Travel
The material facts as set forth in the hearing officer's decision are as follows:
 1. Clark commenced work at Commerce on April 26, 2006, and separated from that employment on February 2, 2010. Initially, Clark was hired on an hourly basis. *Page 2 
After four months she was promoted to the position of Residential Sales Manager, and was compensated on a salary basis at the rate of $ 865 per week. In that position, her scheduled work hours were 8:00 a.m. to 5:00 p.m. for five (5) days per week.
 2. On November 8, 2008, Clark received a memo with her direct deposit notification. The memo was entitled "Employee Benefit Changes", and stated that "Effective immediately the following changes are in effect per Nick:[1]
 1. Per Nick "all employees are now hourly."
 3. Clark testified that she continued to work generally fifty-five (55) hours per week, and did not receive overtime pay in her new status as an hourly employee.
 4. On April 25, 2009 Clark testified she received another memo with her wage deposit information, reiterating that all employees were hourly. At that time, Clark testified she continued to receive the same amount in her paycheck. She questioned Adrienne in the payroll department who instructed her to turn in timesheets showing actual hours worked. That instruction was reiterated to Clark by Melissa Faria, Vice President of Commerce.
 5. Ms. Clark recorded her actual hours worked on timesheets (in the form of an Excel template) she designed, but not on the pre-printed form prepared by Commerce. Clark testified that she used the alternative form to record her hours worked because the pre-printed form used by Commerce referred to time in military fashion, with which she was unfamiliar. *Page 3 
 6. For the pay-period after April 25, 2009, until her separation in February 2011, she continued to receive the same pay-check, regardless of her actual hours worked, working most weeks in excess of forty (40) hours. (The timesheets Clark prepared were placed in evidence.)
 7. Clark also testified that she was required to sign a "sign-in" — "sign-out" ledger, which could be used to check on the accuracy of her recorded hours on the timesheet. This ledger was not entirely accurate each day, in fact, on some days she would leave with Mr. Cambio and not proceed upstairs to sign the log. The weeks for which the timesheets reflected in excess of forty (40) hours worked, so reflect the hours which form the basis of her claim.
 8. The hearing officer found Ms. Clark to be an extremely credible witness, and found her records of time worked to be accurate, despite some perceived inaccuracies between Clark's recorded times and the "sign-in" log, which were explained by her occasionally not using the log to sign in or sign out.
 9. Ms. Clark also testified to her specific job responsibilities, in order for the hearing officer to consider whether those responsibilities placed her in a category deemed exempt from overtime requirements under federal regulation promulgated under the Fair Labor Standards Act (FLSA). The hearing officer considered all evidence with regard to her responsibilities, and found that those responsibilities did not place her in a category of employees exempt from overtime requirements of state and federal law. The hearing officer decided based on competent evidence, that Clark was not an exempt employee. *Page 4 
The categories of exempt employees as set forth in CFR See29 U.S.C. § 541, are as follows:
 1. Executive Employee
 2. Administrative Employee
 3. Professional Employee
 4. Computer Employee, and
 5. Outside Sales Employees.
The State of Rhode Island uses the same criteria to determine which employees are exempt as per the federal regulations as to exempt employees. G.L. § 28-12-4.3(a)(4). Weighing the facts in the record and comparing the credible fact to each of these categories, resulted in a legal determination that Clark was not an exempt employee and therefore was entitled to overtime under the provision of G.L. 28-12-4.1 and 25-3-3. The findings based on the record and the hearing officer's considerations of credibility are as follows:
 1. Clark was not considered an executive employee by virtue of the finding that her primary duty was not management of the enterprise.
 2. Clark was not considered an administrative employee by virtue of the finding that she was paid on an hourly basis and not a salary basis and by virtue of the finding that her primary duty was not related to management of customers.
 3. Clark was not considered a professional employee by virtue of the finding that her primary duty was not the performance of work requiring knowledge of an advanced type.
 4. Clark was not considered a computer employee.
 5. Clark was not considered an outsides sales employee by virtue of the finding that her primary duty was not making sales, and the majority of her business was not conducted away from her employer's place of business. *Page 5 
 10. The hearing officer found that the overtime reflected in Clark's records, was authorized overtime. The hearing officer accepted Clark's testimony that many of her overtime hours were occasions by which Mr. Cambio's insisted that she attend meetings after regular working hours, thus justifying a finding that a portion of the overtime was tacitly approved by Cambio. Additional overtime hours were impliedly approved by Cambio by assigning to her such tasks not generally considered the responsibility of a sales manager. For instance, on one occasion she was asked to do research as to prevailing rents for comparable properties, and associated data collection activities.
 11. The hearing officer did find that a portion of Clark's recorded overtime was not considered authorized, to the extent that she testified to starting times beginning earlier than 8:00 a.m. The hearing officer adjusted her overtime award to only reflect overtime earned after 8:00 a.m., finding that earlier start time reflected Ms. Clark's own choice, rather than time authorized by or requested by Mr. Cambio or other supervisors.
 12. Other overtime deemed by the hearing officer as "authorized" included overtime resulting from additional tasks assigned to Clark by Cambio, such as cleaning a unit prior to occupancy, or working with the legal department with respect to closing on a sale of a unit. Because Clark testified credibly that Mr. Cambio advised her on several occasions that he "owned her 24/7," Clark reasonably believed that any task that Mr. Cambio requested of her was "tacitly authorized," thus justifying the hours of overtime requested by Clark. It would be unfair for Mr. Cambio to deny his authorization, after he intimidated and degraded his employee by telling her that he owned her 24/7, authorized her to carry out the tasks he had asked of her, even if completing these tasks, together with her normal sale activities would result in Clark working overtime.
 Issues on Appeal
Based on the limited appellate jurisdiction of this Court over administrative orders, any factual findings made by the hearing officer are given great deference, as long *Page 6 
as they are supported by evidence in the records, and as long as such findings are not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or are arbitrary, are capricious, are characterized by abuse of discretion, or clearly unwanted exercise of discretion.
Therefore, the first issue of appeal is whether the hearing officer improperly based her decision, contrary to the standards set forth in G.L. 42-35-15(g).
This Court finds that all factual findings made by the hearing officer were supported by reliable, probative, and substantial evidence presented in the entire record. Nor does the Court deem the hearing officer's factual findings "clearly erroneous."
The second issue on this appeal is whether the hearing officer properly determined, as a matter of fact and law, that Clark was not an employee exempt from the overtime provisions of state and federal law. There was certainly ample evidence of record wherein Clark explained the nature of her duties and responsibilities. To the extent that Commerce Park, either through direct evidence or cross-examination, attempts to prove her characterization inaccurately, the hearing officer is entitled to make credibility determinations, in order to make the factual findings necessary to establish exempt status. Those factual findings may not be disturbed, even if the Court independently would reach different conclusions as to those facts. Because the burden would lie with Commerce Park (the Employer) to prove the employee's exempt status, the hearing officer, based upon her own findings of fact as gleamed from the entire record, reached the conclusion that none of the exempt categories applied to Ms. Clark's employment. See Mitchell v.Kentucky Finance Co., 359 U.S. 290, 291 (1959) (noting that the burden of proof is on the party that attempts to prove an FLSA exemption should apply). This Court may not disturb those findings if not clearly erroneous, or not supported by substantial evidence. This Court accepts the hearing officer's conclusion based upon record evidence, that Clark was not an exempt employee, and therefore that Clark's employment as an hourly employee was subject to the overtime provisions of state and federal law.
The third issue on appeal is whether the hearing officer's computation of the overtime award was clearly erroneous, or not supported by adequate evidence in the record. The hearing officer computed the agency's award based upon the testimony of *Page 7 
Clark, and exhibits, in the form of the timesheets introduced into evidence. She was unwilling to accept Clark's records without careful scrutiny. It is clear from the hearing officer's decision that she carefully reviewed Clark's records of overtime, and discounted some of the hours claimed by Clark to be entitled to overtime; in fact, the hearing officer rejected the employee's records in their entirety, to the extent that those records reflected start times earlier than 8:00 a.m. The justification for rejecting those hours as entitled to overtime was premised upon her conclusion that such early time before 8:00 a.m. were hours worked by the employee's own choice. Therefore, the hearing officer clearly and explicitly adjusted such pre — 8:00 a.m. time to reflect start times at 8:00 a.m.
Finally, the hearing officer compared the "sign in/out log" with Clark's time records, and adjusted her computation of overtime earned by adjusting for any inconsistencies. The hearing officer attached a summary of overtime hours she believed were justified by the facts, and based her computation on that summary.
I find the hearing officer carefully considered all relevant evidence in reaching the calculations of overtime due; that her findings were supported by the evidence she found to be most reliable; said computations lending to the award were not clearly erroneous, but reflected her careful consideration of all the evidence. Accordingly, the computation of the award is not in error, and must be upheld by this Court on appear.
 Conclusion
For the above cited reasons, this Court believes that no proper grounds exist for overturning the findings or conclusion of the hearing officer, and this Court will affirm the award of $13,887.47 payable to Ms. Clark.
[1] There is no dispute that the "Nick" referred to in the memo was Nicholas Cambio, the owners and chief executive at Commerce Park Realty.

 *Page 1