**Louis ZACEK, Appellant,**

v.

**AUTOMATED SYSTEMS CORPORATION,**
Appellee.

No. 1328.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Sept. 8, 1976.

Rehearing Denied Sept. 29, 1976.

George M. Bishop, Tipton & Bishop, Houston, for appellant.

David T. Hedges, Jr., Vinson, Elkins, Searls, Connally & Smith, Houston, for appellee.

J. CURTISS BROWN, Chief Justice.

This is a suit for overtime pay under the Fair Labor Standards Act.

Louis Zacek (Zacek or appellant) filed suit against Automated Systems Corporation (Automated or appellee) to recover overtime pay allegedly due him under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19. He also sought liquidated damages and attorney's fees. On the basis of the jury's answers to special issues, the trial court entered a take-nothing judgment. The plaintiff has perfected this appeal.

518

Zacek was hired by Automated as a "systems analyst" in May of 1971, at a starting salary of $1,150.00 per month. He worked for Automated until September of 1972, during which time his salary was raised to $1,220.00 per month. The parties stipulated that, during the time he was employed by Automated, Zacek worked a total of 720 hours in excess of forty hours per week, and that he took a total of seventy-eight hours off as "comp time." The parties further stipulated that Automated was within the provisions of the Fair Labor Standards Act of 1938, which requires, *inter alia,* that an employee who is employed for more than forty hours in one workweek must be compensated for the excess at a rate not less than one and one-half times the regular rate at which he is employed, unless the employee himself is exempt from this requirement. The central controversy in this case concerns whether Zacek was, or was not, exempt from the provisions of the Act requiring payment of overtime.

Section 13(a) of the Act provides that the overtime pay requirement does not apply with respect to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)." In answer to Special Issue No. 1, the jury found that Zacek was employed in a bona fide professional capacity, and on that basis the trial court entered the take-nothing judgment.

■ Exemptions from the Fair Labor Standards Act are to be narrowly construed. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). The burden of proof respecting such exemptions is on the employer. *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966).

Appellant's first four points of error assert that there was no evidence to support the jury's answer to Special Issue No. 1. Special Issue No. 1, the accompanying instruction, and the jury's answer thereto were as follows:

"Do you find from a preponderance of the evidence that the plaintiff, Louis Zacek, was an employee employed in a bona fide professional capacity by the defendant, Automated Systems Corporation?

"Under the applicable law, the term 'employee employed in a bona fide professional capacity' means any employee whose primary duty consists of the performance of work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, which includes work requiring the consistent exercise of discretion and judgment.

"Answer 'We do' or 'We do not'.

"Answer: We Do"

The relevant portions of the regulation defining "professional," contained in 29 C.F.R. § 541.3 (1975), read as follows:

"The term 'employee employed in a bona fide * * * professional capacity' in section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of the performance of:

(1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, . . . and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the

result accomplished cannot be standardized in relation to a given period of time; and

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week . . ., exclusive of board, lodging, or other facilities: . . . *Provided further,* That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week . . . exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance either of work described in paragraph (a)(1) or (3) of this section, which includes work requiring the consistent exercise of discretion and judgment, or of work requiring invention, imagination, or talent in a recognized field of artistic endeavor, shall be deemed to meet all of the requirements of this section."

Since appellant's salary was more than $250 per week, the so-called "streamlined test" contained in subdivision (e) is to be applied. The instruction that accompanied Special Issue No. 1 exactly reflected that test.

■ In ruling on these points, we must of course view the evidence in its most favorable light in support of the jury's finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to it.

The evidence showed that appellant was employed by Automated as a systems analyst. The business of Automated was to deliver computer systems. This involved both "software" (the instructions put into a computer to make it do what it is supposed to do) and "hardware" (the actual computer machinery and equipment). Appellant's duties, in general terms, were to design and implement computer control systems. A computer control system is a set of computer programs designed to interrelate so that certain "real-world" tasks or goals can be accomplished through the use of the computer. On any particular project, the systems analysts employed by Automated generally spent about 30% of their time designing a system, 20% actually coding programs on computer cards, and 50% "debugging," or testing to insure that the programs functioned properly.

During the time that he was employed by Automated, appellant worked on two projects. The first was for the police department in San Diego, California. The second was for a major hospital in Corpus Christi, Texas. Appellant worked on the Corpus Christi project for nine of his sixteen months with Automated.

Sara Hill, who was the project leader in Corpus Christi and who described herself as a "consultant," testified that she had the job of determining what real-world functions the hospital wanted to accomplish with a computer system. She did this through consultation with the hospital staff and administrators. She then conveyed this information to Automated's system analysts, of whom appellant was one. It was then appellant's job to design a system of programs that would accomplish the desired functions.

The president of Automated, John Elvig, stated that a systems analyst's programs "come mostly out of his imagination." In both the Corpus Christi and San Diego projects appellant was required to design computer programs for a "mini-computer." Elvig testified that such computers were the most complex that Automated had to deal with. The mini-computers use a type of computer language called "assembly language." Elvig described assembly language as being much more complex than other computer languages. He testified that appellant was supervised from an administrative standpoint, but that with regard to the actual work of designing the system in Corpus Christi "he had an inordinate amount of discretion." This was borne out by the testimony of Ms. Hill, who was appellant's immediate supervisor in the Corpus Christi project. She stated that she would meet with appellant every couple of

weeks to discuss how the system was progressing, what problems appellant might be having with regard to hardware, and so on. She testified that although appellant did not design all of the programs for the minicomputer in the Corpus Christi project, he designed the most complex ones: "The programs for which Mr. Zacek was responsible were kind of the brains of the system; they scheduled the other programs." This included the "network interrupt handler," a complex program that allows the computer to adequately field messages arriving milliseconds apart.

The evidence further showed that appellant had a Bachelor of Science degree in mathematics. On his employment application to Automated, appellant wrote: "While in college I took several programming courses which entailed the use of an IBM 1620 computer and which I programmed using Fortran II and ASSEMBLY languages. While at Univac I took a Fortran V programming course for the Univac 1108 under EXEC VIII and also a Cobol course for the 1108."

There was evidence that appellant's educational background, as well as his knowledge of the more complicated computer languages, were among the qualifications that influenced Automated in hiring him. Automated's president stated that a person's education is a factor in enabling him to do the type of work done by appellant. He stated that a college degree is a "very, very big help," and is "highly preferred." He also testified that it is preferable that the degree be in a "scientific discipline field," such as physics, mathematics, or engineering. The evidence reflected that more and more universities are offering degrees in computer science.

◼ We hold that the record contains some evidence of probative value supporting the jury's finding that appellant was employed in a bona fide professional capacity. Appellant's first four points of error are overruled.

Appellant's points of error five through seven B assert, in essence, that a certain ruling of the Administrator of the Wage and Hour Division of the Department of Labor requires us to hold as a matter of law that computer programmers and systems analysts do not come within the "professional capacity" exemption. The ruling to which appellant refers is an "interpretation" by the Administrator contained in 29 C.F.R. § 541.302(h) (1975), which reads as follows:

"(h) The question arises whether computer programers and systems analysts in the data processing field are included in the learned professions. At the present time there is too great a variation in standards and academic requirements to conclude that employees employed in such occupations are a part of a true profession recognized as such by the academic community with universally accepted standards for employment in the field. Some computer programers and systems analysts may have managerial and administrative duties which may qualify them for exemption under §§ 541.1 or 541.2 . . . ."

The Supreme Court has held that the rulings of the Administrator

"are not, of course, conclusive, even in the cases with which they directly deal, much less in those to which they apply only by analogy. They do not constitute an interpretation of the Act or a standard for judging factual situations which binds a district court's processes, as an authoritative pronouncement of a higher court might do. But the Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case. They do determine the policy which will guide applications for enforcement by injunction on behalf of the Government. Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons. The fact that the Administrator's policies and standards are not reached by trial in adversary

form does not mean that they are not entitled to respect. This Court has long given considerable and in some cases decisive weight to Treasury Decisions and to interpretative regulations of the Treasury and of other bodies that were not of adversary origin.

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

■ Clearly the Administrator's interpretation regarding systems analysts does not conclusively establish that appellant was not employed in a professional capacity. It has long been held that whether an employee is exempt under the Act is purely a question of fact to be determined upon the consideration of all of the circumstances shown in the record. *Walling v. General Industries Co.*, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377 (6th Cir. 1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971); *Hoyt v. General Insurance Co. of America*, 249 F.2d 589 (9th Cir. 1957); *Schumann v. Ross*, 199 F.2d 219 (7th Cir. 1952). Appellant's points five through seven B are overruled.

Appellant's eighth point of error asserts that there is insufficient evidence to support the jury's answer to Special Issue No. 1. We have outlined above some of the evidence tending to support the jury's finding that appellant was employed in a professional capacity. We have examined the whole record and find that the jury's answer to Special Issue No. 1 is supported by sufficient evidence. See Annot., 72 A.L.R.2d 1156 (1960). Appellant's eighth point is overruled.

In his twenty-third and twenty-fourth points of error appellant complains of the trial court's refusal to submit the following instructions:

"You are instructed that the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. A person who exercises discretion and independent judgment has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance."

"An announcement by the employer that no overtime work will be permitted, or that overtime work will not be compensated unless authorized in advance, will not impair the employee's right to compensation for work which he is actually suffered or permitted to perform."

■ A trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); Tex.R.Civ.P. 277. No abuse of such discretion has been shown. Further, even if the requested instructions could be deemed "proper," we cannot say that the trial court's refusal to submit them probably caused the rendition of an improper judgment. Tex.R.Civ.P. 434. Therefore these points of error are overruled.

Since the trial court's judgment is supportable on the basis of the jury's answer to Special Issue No. 1, we need not consider appellant's attacks on their answers to other special issues. The judgment of the trial court is affirmed.

Affirmed.