George P. SHULTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

The NALLE CLINIC, Appellee. No. 14645.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1971.

Decided May 18, 1971.

Carin Ann Clauss, Atty., Dept. of Justice (Peter G. Nash, Sol. of Labor, Bessie Margolin, Associate Sol., Anastasia T. Dunau, Atty., Dept. of Justice, on brief), for appellant.

Gaston H. Gage (Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The Secretary of Labor sued to enjoin The Nalle Clinic in Charlotte, North Carolina, from failing to pay the minimum and overtime wages prescribed in §§ 6 and 7, of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206 and 207, *before* the amendments effective February 1, 1967. He also asked that the defendant be enjoined from continuing to withhold payment of such compensation owing present and former employees. Added, was a demand for the maintenance of records as directed in §§ 11(c) and 15(a) (5), 29 U.S.C. §§ 211(c) and 215(a) (5).

The Secretary contended that Clinic was an "enterprise" covered by the Act, pointing to § 3(s) (3), 29 U.S.C. § 203(s) (3). Clinic's plea admitted that during the pertinent period its maids and janitors were not paid in accordance with the requirements of the Act. However, Clinic asserted that it was not embraced in the statute because it had no "business purpose" within the definition of an enterprise under § 3(r), 29 U.S.C. § 203(r). Further, Clinic argued that even if it were so classified, then it was a "retail or service" enterprise, and still was not covered because it did not meet a monetary requisite stipulated for such enterprises under § 3(s) (1), 29 U.S.C. § 203(s) (1). Finally, Clinic argues that as a retail or service enterprise, it would be entirely removed from the application of the Act by § 13(a) (2), 29 U.S.C. § 213(a) (2).

The District Court held Clinic to be a retail and service establishment, and ex-

empted it from the Act's wages and hours requirement by virtue of the provisions of 13(a) (2). From the order dismissing his action the Secretary appeals. We find he was entitled to the relief he prayed.

For convenience and a ready understanding of the issues, we quote the relevant sections of the Act, as they existed before February 1, 1967. Section 6(b) directed that every employer pay a specified minimum wage to employees who in any workweek are "employed in an enterprise engaged in [interstate] commerce * * *." Parallel language in § 7 declared that no employer shall employ any such employees beyond the specified hours unless paid extra compensation for the excess time. Section 3(r) defined "enterprise" as "the related activities performed * * * by any person or persons for a common business purpose * * *." Section 3(s) contained these further pertinent definitions:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any persons:

"(1) any such enterprise which has one or more *retail or service* establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, * * * and if such enterprise purchases or receives goods for resale that move or have moved across State lines * * * which amount in total annual volume to $250,000 or more;" (Accent added.)

\* \* \* \* \* \*

"(3) any establishment of any such enterprise, except establishments and enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of

goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000;"

The facts are not in dispute and are contained in the following comprehensive findings of the District Judge:

"1. The defendant, The Nalle Clinic, is a private incorporated medical clinic in the City of Charlotte, Mecklenburg County, North Carolina, composed of a medical staff, variously including 19 to 27 physicians and surgeons, working as specialists in cooperative association, duly licensed under the laws of the State of North Carolina primarily for the group practice of medicine by furnishing medical and surgical services for the individual personal needs of citizens, mostly residents, but including some non-residents of North Carolina.

"2. The manager of The Nalle Clinic, Ralph Drake, a layman, is generally responsible for the administrative supervision of the Clinic. The defendant employs nurses, secretaries, clerks, receptionists, laboratory technicians, physical therapists and other personnel including janitors and maids. *The employment of the janitors and maids is the subject matter of the complaint filed by the Secretary of Labor.* The period involved is the period since February 13, 1966. Plaintiff makes no claims based on alleged violations prior to that date, because of the two-year statute of limitations. (Accent added.)

"3. Since February 13, 1966, the defendant has each year received annual income from fees for professional medical services in excess of $1,-000,000 and as high as $1,800,000. * * *"

* * * * * *

"9. The total annual dollar volume of goods during the pertinent period which the defendant bought or received for resale, which goods moved or had moved across State lines (not in deliveries from the reselling establishment) never exceeded $80,000."

* * * * * *

"Upon these facts, it is the court's further opinion that The Nalle Clinic is a 'retail or service establishment' under the exemption set out in 29 U. S.C.A., § 213(a) (2) * * *."

Whether Clinic was a "retail or service establishment" is a question of law as there was no dispute on the facts. See United States v. General Motors, 384 U.S. 127, 141 n. 16, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1965). In our judgment the District Court was wrong in attributing to Clinic a retail concept.

I. The only definition of this terminology in the Act is contained in § 13(a) (2) providing for exemption of certain enterprises of this kind. It says that:

"A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *."

While Clinic qualifies as to the other requisites of the definition, it does not qualify as engaged in "retail" pursuits. In discussing the determinants in classifying an operation, the Court in Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694, reh. den. 383 U.S. 963, 86 S.Ct. 1219, 16 L. Ed.2d 305 (1966) after noting that "not everything the consumer purchases can be a retail sale of goods or services", at 203, 86 S.Ct. at 746, observed that a factor to be weighed was the "common conception of the term retail", at 208, 86 S. Ct. at 748, and that "the considerable discretion possessed by the Secretary as the one responsible for the actual administration of the Act should not be understressed", at 205, 86 S.Ct. at 747.

Clinic does not appear to us to be "retail" in the traditional sense. Applying terms normally attributable to the sale of merchandise to the practice of medicine seems contrary to common usage. True, Clinic's manager and a past president of the local medical socie-

ty gave their opinion that Clinic could be termed "retail", and while this evidence is not to be ignored, it is not conclusive. See Mitchell v. City Ice Co., 273 F.2d 560, 562 (5 Cir. 1960). Since, to repeat, there was no contest on the facts, this testimony was merely expressions of opinion. On balance, they are clearly outweighed by the ordinary and commonplace connotation accorded in layman's parlance to "retail".

With respect to the "actual administration of the Act" mentioned in Idaho *Sheet Metal Works*, supra, 383 U.S. 963, 86 S.Ct. 1219, we have held that an opinion letter of the Administrator, while "not binding on the court" should be given "considerable and in some cases decisive weight". Shultz v. W. R. Hartin & Son, Inc., 428 F.2d 186, 191 (4 Cir. 1970). For this reason we first advert to the opinion of the Administrator released January 11, 1968, reading in pertinent part as follows:

> "It is the Division's position that there is no retail concept in the rendition of a doctor's services. The doctor-patient relationship is in no way comparable to the purchase by a customer of goods or services at a retail establishment. The practice of doctors is that of the healing art, not that of retail servicing. There has never been any concept of retail selling or servicing in the practice by doctors of their profession, and it is clear that the exemption provided in section 13(a) (2) was never intended to apply to establishments engaged in providing the professional services of qualified physicians."

Although issued only a month before the initiation of the present suit, this letter ought not to be dismissed as merely a self-serving declaration, for it is an official opinion of national scope. For the same reason, even though promulgated post litem motam, the Administrator's Interpretative Bulletin on The Fair Labor Standards Act as applied to Retailers of Goods or Services should be considered. It adds "dentists' offices" and "doctors' offices" as lacking in retail concept. 29 CFR 779.317.

Also noteworthy is the Administrator's early ruling that legal, accounting, engineering and other professional firms are not "sufficiently similar in character to retail establishments to be considered 'service establishments' within the meaning of Section 13(a) (2)". Interpretative Bulletin No. 6, issued December 17, 1938, 1942 Wage and Hour Manual, 334–335. To this classification there have been added medical laboratories and ambulance services as also lacking any "retail concept". 29 CFR 779.317. While these administrative rulings have alluded to "retail", they have in practice read "service" in the same sense when treating the term "retail or service" enterprise. Guess v. Montague, 140 F.2d 500, 503 (4 Cir. 1943).

■ Thus we conclude that Clinic was not a retail or service establishment. Consequently, it did not fit into the exemption of § 13(a) (2) as the District Court held, for that section exempts only retail or service establishments.

■ II. The next question is under what provision of the Fair Labor Standards Act, if any, Clinic was subject in compensating its employees. We find it in § 3(s) (3), supra, set out as follows:

> "(3) any establishment of any such enterprise, *except establishments and enterprises referred to in other paragraphs of this subsection,* which has employees engaged in commerce or the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,-000,000;" (Accent added.)

Clinic's "sales"—income from the practice of the doctors—exceeded the necessary volume and Clinic can be said to have engaged its employees in interstate commerce as required for coverage. Since § 3(s) (1) pertains to "retail and service establishments", 3(s) (3) must be read to exclude establishments having a "retail concept" because such are referred to in another paragraph of §

3(s). Consequently, Clinic came within the Act's proscriptions and must be required to comply with the minimum wage.

Accordingly, the judgment on appeal is vacated, and the cause remanded for the entry of a decree granting the prayers of the appellant's complaint.

Vacated and remanded.