**James D. HODGSON, Secretary of Labor, United States Department of Labor, Appellee,**

v.

**DUKE UNIVERSITY, Appellant.**

No. 71–1666.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1972.

Decided May 16, 1972.

---

Peter G. Nash, Solicitor of Labor, Bessie Margolin, Associate Solicitor of Labor and Carin Ann Clauss, Washington, D. C., for appellee.

Homer L. Deakins, Jr., Greenville, S. C., and E. C. Bryson, Durham, N. C., for appellant.

Before WINTER and BUTZNER, Circuit Judges, and CHAPMAN, District Judge.

CHAPMAN, District Judge.

The Secretary of Labor sued to enjoin Duke University from violating the provisions of Sections 15(a) (2), 15(a) (4) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.). The complaint also asked that Duke be restrained from withholding minimum wages and overtime compensation due under the Act.

Prior to presenting this matter to the District Court the parties stipulated the following facts:

1. At all times material, the Defendant has been and is a non-profit institution of higher education.

2. Since on and after February 1, 1967, Defendant has been an "enterprise" within the meaning of § 3(r) (1) of the Fair Labor Standards Act, as amended, 29 U.S.C. § 203(r) (1), and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of § 3(s) (4) of the Act, 29 U.S.C. § 203 (s) (4), as amended. Prior to Feb-

ruary 1, 1967, the Defendant was not an "enterprise" within the meaning of § 3(r) of the Act.

3. In addition to the "enterprise coverage described in paragraph 2 above, Plaintiff contends that many of the Defendant's employees have been and are traditionally covered by the Act by virtue of the employees' activities which resulted in the employees being "engaged in commerce or in the production of goods for commerce" within the meaning of §§ 3(b) (i), (j), 6(a), and 7(a) (1) of the Act, 29 U.S.C. §§ 203(b), (i), (j), 206(a) and 207(a) (1). The Defendant denies that its employees have been or are engaged in activities which resulted in their being "engaged in commerce or in the production of goods for commerce" within the meaning of §§ 3(b), (i), (j), 6(a), and 7(a) (1) of the Act, 29 U.S.C. §§ 203(b), (i), (j), 206(a), and 207(a) (1). This disputed issue of fact is not relevant to a determination of the Motion for Partial Summary Judgment filed by the Plaintiff.

4. The sole issue presented for determination in the Motion for Partial Summary Judgment filed by the Plaintiff in this case is whether or not the retail concept applicable to § 13 (a) (2) of the Fair Labor Standards Act, as amended, applied to nonprofit institutions of higher education such as the Defendant prior to February 1, 1967. The facts concerning this issue are undisputed and the question raised is a legal one.

Thereafter, the Secretary moved for a partial summary judgment to decide the issue of whether Duke was a retail or service establishment within the meaning of § 13(a) (2). The late Judge Edwin M. Stanley in a short memorandum order found that Duke did not qualify under the retail concept and this appeal was allowed under 28 U.S.C. § 1292(b).

We affirm the District Court.

Duke contends that institutions of higher education are included within the retail concept. It cites as authority the statutory language of the 1961 and 1966 amendments to the Act, the legislative intention behind such amendments and administrative interpretations of the Act. Unfortunately, the appellant does not give the court a clear path to follow through this maze of language, and we do not reach the same conclusion as Duke suggests.

█ Exemptions from the Fair Labor Standards Act are narrowly construed. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Courts have repeatedly confined § 13(a) (2) exemptions to businesses which are "traditionally regarded as retail" and which are epitomized by the corner grocer, department store, drug store and the like. As examples of businesses or establishments not considered within the retail scope see: Mitchell v. Kentucky Finance Co., supra (a small loan company); Idaho Metal Works v. Wirtz, 383 U.S. 190, 202–203, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966) (a producer of potato processing equipment); Shultz v. Nalle Clinic, 444 F.2d 17 (4th Cir. 1971), cert. den. 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250, 1971 (a medical clinic); Goldberg v. Roberts, 291 F.2d 532 (9th Cir. 1961) (a letter shop which provided addressing and mailing services); Goldberg v. Sorvas, 294 F.2d 841 (3rd Cir. 1961) (a shopping service which investigated and reported on the honesty and efficiency of its customer's employees).

We can find nothing in the language of the 1961 and 1966 amendments to 13 (a) (2) to indicate that higher educational institutions have a retail concept.[1]

---

1. Section 13(a) (2), as amended in 1961 (75 Stat. 65), reads as follows:

SEC. 13(a) The provisions of section 6 and 7 shall not apply with respect to * * *

(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made

Defendant argues that before the 1966 amendment, the mention of "a school for physically or mentally handicapped or gifted children", in 13(a) (2) (iii), indicates that all education had a retail concept, since Congress would not divide educational institutions into different categories with some considered retail and others not. This argument cannot pass the narrow construction test required for exemptions to the Act. The word "hospital" in the *Nalle* case, supra, could not be stretched to include a clinic made up of a group of doctors practicing together. A "school for physically or mentally handicapped or gifted children" cannot be expanded to include a school such as Duke University.

Such position is also contra to the legislative history of the amendment. Congressional intent, according to the Senate report, was:

"The primary purpose in providing these exemptions [in § 13(a) (2) (iii)] is to avoid a situation in which some establishments engaged in these activities are covered while others are not. Non-profit hospitals, nursing homes, and educational institutions, are already excluded by virtue of the definition of 'enterprise' which does not include eleemosynary, religious, or educational organizations not operated for profit." (Senate Report 145, 87th Congress, First Session, 1961, page 28; reprinted in 1961 U.S. Congressional and Administration News, page 1648). See House Conference Report 372, 87th Congress, First Session, 1961, pages 14–15.

At the time of this amendment, some schools for physically or mentally handicapped or gifted children were set up on a profit making basis and others were non-profit. The purpose of this language in the amendment was to treat all of these institutions alike, and to provide an exemption for those that were not exempted under the "enterprise" definition.

Further study of the legislative history of the 1961 amendment directly refutes the defendant's argument. The House of Representatives and the Senate, after passing different versions of the 1961 Fair Labor Standards Amendments, submitted the matter to a conference committee for resolution of the differences.[2]

---

within the State in which the establishment is located, if such establishment—

(i) is not in an enterprise described in section 3(s), or

(ii) is in such an enterprise and is a hotel, motel, restaurant, or motion picture theater; or is an amusement or recreational establishment that operates on a seasonal basis, or

(iii) is in such an enterprise and is a hospital, or an institution which is primarily engaged in the care of the sick, the aged, the mentally ill or defective, residing on the premises of such institution, or a school for physically or mentally handicapped or gifted children, or

(iv) is in such an enterprise and has an annual dollar volume of sales (exclusive of excise taxes at the retail level which are separately stated) which is less than $250,000 * * *. Section 13(a) (2) was again amended in 1966 (80 Stat. 830), and it now provides a complete exemption for:

any employee employed by any retail or service establishment (except an establishment or employee engaged in laundering, cleaning, or repairing clothing or fabrics or an establishment engaged in the operation of a hospital, institution, or school described in section 3(s) (4)), if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s) or such establishment has an annual dollar volume of sales which is less than $250,000 * * *. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry * * *.

2. House Conference Report 372, 87th Congress, supra.

The House bill defined "retail establishment" to exclude establishments which were primarily service establishments and gave as examples of such establishments the following: hotels, motels, restaurants, caterers, hospitals, laundry or dry cleaning establishments, motion picture theaters, amusements or recreational establishments, parking lots, beauty or barber shops, and repair shops. The Senate bill extended coverage to employees of retail and service enterprises but exempted the following: hotels, motels, restaurants, motion picture theaters, seasonal recreational establishments, hospitals, institutions primarily engaged in the care of the sick, the aged or the mentally ill or defective, and schools for physically or mentally handicapped or gifted children.[3]

The bill as finally passed included the Senate's version of the "retail establishment" definition, and the conference committee noted that both the House and the Senate versions reached essentially the same result.

 Congress had the option of excluding service establishments and limiting such exclusion by specific definition of the term, or it could include the general group and exempt by specific enumerations or example. Since Congress chose to include all "service establishments" under the Fair Labor Standards Act and exclude only by specific listings, one is led to believe that schools in general are "service establishments." However, the Courts have applied the principle "*noscitur a socilis*" and reached the conclusion that the "service establishments" must be of the same sort as the "retail establishments". Guess v. Montague, 140 F.2d 500 (4 CA 1943). In other words, the phrase "retail or service establishment" must be read as one, and thus the establishment must be a retail service establishment, or a retail sales establishment. (Walling v. Thompson, D.C.Cal.1946, 65 F.Supp. 686). The conventional definition of a "retail sales or service establishment" is whether one is

selling in small quantities to the ultimate consumer, but this can hardly be applied to a University.

In Shultz v. Deane Hall Country Club, Inc., D.C., 310 F.Supp. 272 (1969), the issue of whether the club was a "retail or service establishment" turned on the point that a "retail or service establishment" must be available to the general public. Duke University, like a country club, is available only to a select group of persons who have been selected by a screening committee, and thus is not available to the general public.

The Wage and Hour Administrator in an opinion dated July 7, 1967 (W. H.M. 91: 1156S) stated: "Institutions of higher education are not retail establishments because they are not engaged in the sale of goods and services to which the retail concept applies." This Court is of the opinion that this assertion by the Administrator of the Wage and Hour Division of the Department of Labor is correct and hereby adopts it.

The opinion of the lower court is affirmed.

---

3. Pages 14 and 15, House Conference Report.