**Louis F. RACINE, Jr.; Jack B. Furey, Plaintiffs–Appellees, Cross–Appellants,**

**v.**

**UNITED STATES of America; Dept. of Agriculture; John R. Block, Defendants–Appellants, Cross–Appellees.**

Nos. 87–3886, 87–4213.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1988.

Decided Sept. 27, 1988.

Maria A. Iizuka, U.S. Dept. of Justice, Washington, D.C., for defendants/appellants/cross/appellees.

John B. Ingelstrom, Racine, Olson, Nye, Cooper & Budge, Pocatello, Idaho, for plaintiffs/appellees/cross/appellants.

Before ALARCON and BEEZER, Circuit Judges, and AGUILAR,* District Judge.

ALARCON, Circuit Judge:

## I.

Defendants - appellants - cross - appellees the United States and John R. Block, Secretary of Agriculture, appeal from an order of the district court granting summary judgment in favor of plaintiffs-appellees-cross-appellants Louis F. Racine, Jr. and Jack B. Furey (collectively "Racine"). We must decide whether a scenic easement purchased by the government to protect esthetic values in the Sawtooth National Recreation Area (SNRA) precludes construction by the landowner of structures necessary for dude ranching operations. Because we have concluded that the district court correctly interpreted the terms of the easement, we affirm.

## II.

In 1972, Congress established the SNRA "to assure the preservation and protection of the natural, scenic, historic, pastoral, and fish and wildlife values and to provide for the enhancement of ... recreational values." 16 U.S.C. § 460aa (1982). Congress authorized the Secretary of Agriculture to acquire "scenic easements" from private owners of land within the SNRA in order to assure the protection and preservation of scenic values within the SNRA. *Id.* at § 460aa–2. A "scenic easement" provides the Secretary with "the right to control the use of land in order to protect the esthetic values ... but ... [does] not preclude the continuation of any use exercised by the owner [of the land]." *Id.*

Congress also authorized the Secretary to "make and publish regulations setting standards for the use ... of privately owned property within the ... [SNRA]." *Id.* at 460aa–3. Pursuant to this authority, the Secretary promulgated 36 C.F.R. § 292.16(g)(1) (1987) which allows on pri-

vate land "structures which do not substantially *impair* or *detract* from the scenic, natural, historic, pastoral, and fish and wildlife values of the area and which are necessary for ... dude ranching such as dwellings, barns, storage buildings, fences, corrals, irrigation facilities, roads, and utilities."

## III.

Racine owns property within the SNRA. The government acquired a scenic easement on this property in 1974 from Racine's predecessor in interest. The scenic easement provides, "[w]ith reference to 36 C.F.R. § 292.16(g)(1), it is agreed that only one residence and one tenant dwelling are authorized within the easement area."

In 1983, Racine negotiated a sale of the property contingent on the Forest Service's approval of a proposal to develop it for dude ranching. The proposal contemplated construction of a log ranch house, three two-story bunk barns, one equipment barn, riding stables, parking facilities, and recreational support facilities. The property already contained a log cabin, bunkhouse and barn.

The development proposal was submitted to the Forest Service. The Forest Service rejected the proposal on the ground that the easement "limits the structures suitable for human habitation on the property to one residence and one tenant dwelling." Racine unsuccessfully pursued administrative remedies contending that nothing in the easement or applicable regulations restricted or prohibited dude ranching.

On February 17, 1984, the Chief of the Forest Service (Chief) affirmed the Park Superintendent's decision to reject the proposal. The Chief concluded that the use of the property for dude ranch operation was limited by the easement's language authorizing only one residence and one tenant dwelling.

On March 22, 1984, Racine appealed the Chief's decision to the Secretary of Agriculture arguing that the right to use the property as a dude ranch was not precluded by

* Honorable Robert Aguilar, United States District Judge for the Northern District of California, sitting by designation.

the easement. Alternatively, Racine argued that if the Forest Service disapproved the dude ranch plans, the United States was required to condemn the property. On May 17, 1984, the Secretary affirmed the decision of the Chief, holding that the government had "acquired the property rights for the development of any dude ranch operation beyond the scope of one residence and one tenant dwelling."

Upon exhaustion of administrative remedies, Racine filed a complaint in the district court on August 27, 1984. Racine sought review and reversal of the administrative action, quiet title relief, and monetary compensation based upon the theory of inverse condemnation. The government moved to dismiss the complaint on jurisdictional grounds. The district court held that exclusive jurisdiction over the monetary claim was vested in the United States Claims Court. Racine's monetary claim was severed and transferred to the Claims Court. The district court retained jurisdiction over the claims for review of the agency action and for quiet title relief.

The parties each moved for summary judgment. The district court held that the government's interpretation of the easement was "not supported by the plain language of the deed" and was "plainly erroneous." The court interpreted the easement as allowing dude ranching structures such as corrals and barns in addition to one residence and one tenant dwelling.

### IV.

The government claims that this case is moot because Racine's dude ranching proposal was withdrawn before the district court entered judgment. The government alleges that since the proposal had been withdrawn, the district court could grant Racine no effective relief and thus the case was moot. " 'A case, or an issue in a case, is considered moot "if it has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.' " ' " *Aquirre v. S.S. Sohio Intrepid,* 801 F.2d 1185, 1189 (9th Cir.1986) (quoting *Lindquist v. Idaho State Board of Corrections,* 776 F.2d 851, 853–54 (9th Cir. 1985)).

We agree with the government that withdrawal of the proposal rendered Racine's administrative review claim moot. However, Racine did not solely seek review of the agency's rejection of the withdrawn proposal. Racine also filed suit under 28 U.S.C. § 2409a (1982) seeking to "[q]uiet ... title and interest in the subject property so as to declare ... [Racine's] retention of the right to develop dude ranching operations on said property...." The quiet title claim survives the withdrawal of the proposal. The quiet title claim is not moot.

### V.

We review *de novo* the district court's interpretation of the scenic easement. *See Miller v. Safeco Title Ins.,* 758 F.2d 364, 367 (9th Cir.1985) ("[w]hen the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable de novo"). We reject the government's assertion that the Secretary's interpretation of the easement may be overturned only if arbitrary, capricious and an abuse of discretion. The Secretary's interpretation of the easement is not entitled to deference because it did not involve an interpretation of a statute or regulation. *Compare, e.g., Kwan v. Donovan,* 777 F.2d 479, 480 (9th Cir.1985) (an agency's interpretation of its own regulation "is entitled to a high degree of deference").

As noted above, the scenic easement on Racine's property provides "[w]ith reference to 36 C.F.R. 292.16(g)(1), it is agreed that only one residence and one tenant dwelling are authorized within the easement area." Section 292.16(g)(1), incorporated by reference into the easement, permits structures "necessary for ... dude ranching" such as barns and corrals.

The district court held that the "one-residence/one tenant dwelling limitation must be read consistently with [section 292.-16(g)(1)]." The court held that "[t]here is only one consistent way to interpret ... [the] provisions [in the easement]: only one residence and one tenant dwelling will be

permitted among the other dude ranching facilities permitted under ... [section 292.-16(g)(1)]."

■ We agree with the district court that the only consistent reading of the plain language of the easement is that dude ranching facilities such as barns and corrals may be allowed on Racine's land in addition to one residence and one tenant dwelling. Were we to interpret the easement as the Secretary did, we would be forced to ignore the language in section 292.16(g)(1), which permits dude ranching structures which do not impair "scenic, natural, historic, pastoral, and fish and wildlife values...." Under the Secretary's interpretation of the easement, no dude ranching structures would be allowed. This is contrary to the plain meaning of the language used in the easement. As the district court aptly commented,

> It would have been easy for the Government's drafter to place language in the deed prohibiting all dude ranching buildings otherwise permitted by the regulation.... But the Government did not do so. Because of this drafting failure, the Government is now essentially asking this Court to re-write the deed....

> .    .    .    .    .

> But the Court does not have the power to re-write the deed.

### VI.

Racine also seeks reversal of the district court's order denying attorney's fees. The district court denied Racine's motion for attorneys fees because it found the position of the government was substantially justified. According to the district court, "[a]lthough the Court ultimately held that the Government had not properly interpreted the scenic easement, the Court finds that the Government's interpretation was made in good faith and raised issues that were complex and not easy to resolve."

28 U.S.C. § 2412(d)(1)(A) provides, in part, that:

> a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court

having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A district court's denial of a motion for attorney's fees under section 2412(d)(1)(A) is reviewed for abuse of discretion. *Petition of Hill,* 775 F.2d 1037, 1040 (9th Cir. 1985).

■ The district court did not abuse its discretion in denying Racine's motion for attorney's fees. The standard to be applied in determining whether the government's position was substantially justified is one of "reasonableness." *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984); *International Woodworkers of America v. Donovan,* 792 F.2d 762, 765 (9th Cir.1985). The government's interpretation of the easement was reasonable in light of the fact that the draftsman cited the regulation instead of expressly identifying for the type of additional structures that would be permitted if the landowner elected to operate a dude ranch.

AFFIRMED.