Lynn MARTIN *, Secretary of Labor,
U.S. Department of Labor,
Plaintiff–Appellee,

v.

THE REFRIGERATION SCHOOL,
INC., Defendant–Appellant.

Lynn MARTIN, Secretary of Labor,
U.S. Department of Labor,
Plaintiff–Appellant,

v.

THE REFRIGERATION SCHOOL,
INC., Defendant–Appellee.

Nos. 90–16799, 91–15090.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1992.

Decided June 23, 1992.

Paul Frieden, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee-cross-appellant.

Marc L. Spitzer, Fennemore, Craig, Von Ammon, Udall & Powers, Phoenix, Ariz., for defendant-appellant-cross-appellee.

* Lynn Martin is substituted for her predecessor, Elizabeth H. Dole, as Secretary of Labor. Fed. R.App.P. 43(c)(1).

Before: REINHARDT, NOONAN, and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

The key question in this case is whether a trade school is a retail establishment for the purposes of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. (the FLSA). The Secretary of Labor ruled that it was not; the district court sustained the Secretary; and we affirm, although for different reasons. We remand only for the calculation of pre-judgment interest.

## BACKGROUND

The Secretary brought suit against the Refrigeration School, Inc. (RSI), seeking injunctive relief and the recovery of back wages on behalf of its "admissions representatives." The stipulated facts are as follows:

RSI is one of 167 trade and technical schools in Arizona offering non-degree career programs to their students. It has had annual gross receipts of more than $250,000 since 1985, and its annual dollar volume exceeded $2 million in 1986. The average age of its students is 27. Seventy-seven percent have completed high school, and twelve percent have taken post secondary courses. RSI trains its students "for refrigeration, electrical and electro-mechanical employment in industry." The school's programs prepare students "to service, repair, and maintain various types of refrigeration and electrical equipment."

RSI employs an average of 20 persons in office administration and clerical work; 20 instructors; and an average of 6 "admissions representatives," who are the subject of this lawsuit. The admissions representatives respond to inquiries from potential students; make appointments to interview prospective students; provide tours of classrooms and student services; complete all required forms for enrollment; maintain contact with and counsel the students at RSI; and prepare and conduct presentations to potential RSI students. RSI adver-tises in the mass media, and telephone calls that result from this advertising are handled by the admissions representatives. They perform most of their work over the telephone, usually following up leads as to potential students from such sources as vocational rehabilitation counselors. The representatives are, in effect, recruiters for the school, whose work, because of the method of their compensation, often involves overtime.

The representatives are paid on a commission basis calculated without regard to overtime in terms of the students that they enroll. The commission is on a sliding scale that escalates as the representative recruits more students. In the period 1983–1987 the lowest paid admissions representative who worked a complete calendar year earned $25,443; the same person the next year earned $81,025, becoming the highest paid representative in the 1983–87 period—statistics that are suggestive of the degree that compensation depends on the representative's initiative and willingness to work.

## PROCEEDINGS

The Secretary filed a complaint in the district court on April 27, 1988 seeking to recover overtime for the admissions representatives of RSI for the period 1983–1987 and an injunction against further violation of the FLSA. After the facts were stipulated, the parties filed cross-motions for summary judgment. The only question was whether RSI was a retail establishment within the meaning of the FLSA.

The district court granted judgment for the Secretary, and RSI appealed. The district court ordered the payment of unpaid back wages but did not require the payment of interest, and the Secretary appealed.

## ANALYSIS

Under the FLSA, enterprises engaged in commerce are subject to payment of overtime at a rate set by the statute. 29 U.S.C. § 207(a). Retail establishments, however, are exempt from this requirement as to

employees whose regular rate of pay is 150 percent of the minimum hourly rate and who receive more than half their compensation by way of commissions. 29 U.S.C. § 207(i). Admission representatives are such employees. The question is whether RSI is a retail establishment within the meaning of the statute.

■ If Congress has not spoken directly to the precise question at issue, but rather has delegated, either explicitly or implicitly, the responsibility for answering such questions to the agency, then we will defer to the agency's answer as long as it represents a reasonable construction of the statute. *Chevron USA, Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The FLSA does not, standing alone, provide an answer to the question before us. The meaning of the term "retail establishment" is not obvious without further definition, and the statutory definition is of little assistance.[1] Absent agency regulations we cannot say that the answer to the question of whether RSI is a retail establishment is logically compelled. The term as used in the statute is therefore ambiguous under the *Chevron* analysis.

RSI produces an ingenious but ultimately unpersuasive argument that the language of the statute alone provides an unambiguous answer to the question whether RSI is a retail establishment. It does so by stringing together a number of elements of the statute. RSI points out that, when first enacting 29 U.S.C. § 213(a)(2), Congress provided an exemption from certain provisions of the FLSA for some retail establishments. In 1966, Congress amended that section so as to create an explicit exception to the statutory exemption. The exception applied to "an establishment or employee engaged in laundering or dry cleaning or an establishment engaged in the operation of a hospital, institution or school described in Section 203(s)(5) of this title." 29 U.S.C. § 213(a)(2) (as in effect in 1966–1989). The educational institutions identified in § 203(s)(5) are "a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, [and] an institution of higher education."

RSI does not claim the substantive exemption of section 213(a)(2) for itself; nor does it argue that the exception to the exemption affects it directly in any way. Rather, it uses the language of the exception and of section 203(s)(5) to make a point about Congress' intent. RSI's argument is that Congress must have thought that schools were retail or service establishments for purposes of the statute. Otherwise, why bother to include schools within the exception to the exemption? According to RSI, because Congress expressly excepted schools from the class of retail establishments that are eligible for the exemption and because Congress specifically defined the schools to be excluded as schools for the handicapped or gifted, preschools, elementary schools, secondary schools, and institutions of higher learning, Congress must have thought that all those educational institutions were retail establishments.

■ Although RSI's argument has some appeal, we believe it reads too much into § 213(a)(2). There can be no doubt that the primary reason that Congress excepted schools from the exemption was to ensure that schools would not receive the benefits of that exemption; however, there is no reason to believe that Congress had the additional view that all schools were in fact retail establishments. It is more plausible to conclude that Congress, cognizant of the fact that *some* schools were likely to be held to be retail establishments, and willing to leave resolution of the question of exactly which schools to the Department of Labor, wanted to be sure that, regardless of how the agency resolved that question, no schools would be exempt under § 213(a)(2). Thus, the exception of schools from an

---

**1.** The statute defines a retail establishment as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C. § 213(a)(2). Although this definition narrows the class of establishments that may qualify as retail, it provides little guidance in determining the nature of the "retail" concept as an initial matter.

exemption for certain retail establishments does not demonstrate that Congress considered all schools to be retail establishments under the statute.

Nor does the fact that the statute enumerates a comprehensive listing of types of schools in its definition section assist RSI. The statute's comprehensive list of schools occurs in the context of defining the various establishments that should be considered institutions engaged in commerce, not in the context of defining those institutions that should be considered to have the retail concept. *See* 29 U.S.C. § 203(s)(5). The enumeration in § 203(s)(5), therefore, indicates only that Congress gave specific attention to what educational institutions should qualify under the commerce clause; the subsequent reference to that section in the exception to the § 213(a)(2) exemption simply suggests that Congress took advantage of a pre-existing list of educational institutions already contained in the statute, not that it intended to give specific attention to the question of which educational institutions should be classified as retail establishments. Accordingly, we reject RSI's argument that the statute provides an answer to the question before us.

We must next determine whether we should defer to the Secretary's determination that RSI is not a "retail establishment" under the statute. The meaning of the term "retail establishment" as used in the FLSA is the sort of question which implicates an agency's specialized knowledge so that we may assume Congress has implicitly delegated authority for answering the question to the party authorized to administer the statute. *See Lile v. University of Iowa Hospitals and Clinics,* 886 F.2d 157, 160 (8th Cir.1989); *Racine v. United States,* 858 F.2d 506, 508 (9th Cir. 1988); *compare Force v. Director, OWCP,* 938 F.2d 981, 985 (9th Cir.1991) (deferring to the agency's construction of the Longshore and Harbor Workers' Compensation Act with regard to the question of allocation of a worker's recovery in tort) *with Chavez v. Director, OWCP,* 961 F.2d 1409, 1415 n. 1 (9th Cir.1992) (refusing to defer to agency's construction of the LHWCA with regard to questions of justiciability of

claims). The FLSA is administered by the Secretary. *See Idaho Sheet Metal Works v. Wirtz,* 383 U.S. 190, 205, 86 S.Ct. 737, 746, 15 L.Ed.2d 694 (1966). Thus, we must look to see how the Secretary has construed the ambiguous phrase "retail establishment".

■ The Secretary has promulgated rather elaborate regulations governing the interpretation of "retail establishment", a term which the regulations note "is susceptible of various interpretations." 29 C.F.R. § 779.315. In § 779.318(a), the regulations detail some of the characteristics of a retail establishment: it "serves the everyday needs of the community;" "is at the very end of the stream of distribution," and "provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living." Despite this list of characteristics, the Secretary has recognized that there remain many types of establishments "where it is not readily apparent whether a retail concept exists." § 779.317. As a partial remedy, the Secretary has included in the applicable regulations two lists of establishments, one of which enumerates establishments in which she has determined the retail concept resides and the other of which enumerates those establishments in which she has determined it does not. The list of non-retail establishments, which extends from "Accounting firms" to "Wrecking contractors", is highly relevant to our inquiry, for included on it is the entry "Schools (except schools for mentally or physically handicapped or gifted children)." *Id.*

The Secretary has determined that RSI is a school but that it is not dedicated to the educational needs of either the handicapped or the gifted. Thus, she concludes that, under the terms of the regulation in question—the non-retail list included in § 779.-317—RSI is a non-retail establishment. Assuming the validity of her regulation, the Secretary's determinations are unquestionably accurate and her conclusion follows logically from those determinations. However, in reviewing the Secretary's conclusion, we must determine whether the

regulation on which she relies offers a reasonable construction of the term "retail establishment" in so far as it applies to educational institutions. Only if it does, will we defer to the characterization of RSI made under that provision. *See Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 420, 102 L.Ed.2d 408 (1988); *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782 ("[A] court may not substitute its own construction of a statutory provision for *a reasonable interpretation* made by the administrator of an agency." (emphasis added and citations omitted)).

As we discuss below, we have no difficulty with the Secretary's determination of the general characteristics of a retail establishment as set forth in § 779.318. However, we find the specific treatment of schools in the list of non-retail establishments contained in § 779.317 contrary to reason. Under § 779.317, schools do not qualify as retail establishments unless they are designed to serve the educational needs of the handicapped or gifted. The singling out in the regulations of educational institutions for the handicapped or gifted, and the exclusion of all other schools, is unexplained except for the rather unenlightening and perhaps tautological statement that "such institutions have been recognized as having a retail concept." § 779.338(b). The rationale for the distinction is far from apparent from the Secretary's characterization of retail establishments as those

serving "the everyday needs of the community." § 779.318(a). A child requires schooling regardless of the level of his physical and mental abilities. The local community needs schools for all of its children, and the ultimate purpose for which such educational services are provided does not vary in any meaningful way between schools for the "handicapped," "average," and "gifted" child. The purpose of all these schools is to assist children to reach their maximum potential and to equip them to meet society's demands to the best of their ability. We can discern no basis for classifying schools for the gifted and the handicapped, but not schools for other children, as retail establishments.[2] As a consequence, we conclude that there is no rational or factual basis for the Secretary's decision, embodied in § 779.317, to include only two categories of schools and to exclude all others. We therefore do not defer to that decision.

The Secretary next invites us to defer to her application of the general characteristics of retail establishments contained in § 779.318 to RSI. Again, we decline her invitation. Her conclusion that RSI is not a retail establishment was based on the inclusion of schools on the list of non-retail establishments contained in § 779.317, not on an application of § 779.318. Her current reliance on a construction of § 779.318 as a basis for her conclusion is ad hoc and was arrived at in connection with the cur-

---

**2.** Moreover, there appear to be no generating principles underlying the entire list of non-retail establishments which could help us to rationalize the distinction between schools for the handicapped or gifted and other schools. Indeed, in the context of service establishments, the list seems entirely unrelated to the Secretary's elaboration of characteristics of "retail establishment" in § 779.318(a). For example, barber shops, crematories, funeral homes, public baths, reducing establishments, and scalp-treatment establishments are retail establishments. § 779.-320. By contrast, dentists, doctors, and lawyers offices are not. § 779.317. These distinctions might be rationalized on the ground that the latter are professional services, but that ground is unrelated to the question of the "everyday needs of the community" or "the comfort and convenience of [the general] public in the course of its daily living." § 779.318. A community's tonsorial services are hardly more integral to its daily routine than its medical or dental ones. In any case, the division between professional and non-professional services does not shed any light on the basis for distinguishing between schools for the handicapped or gifted and other schools. We also note other categorizations which are exceedingly difficult to rationalize at first glance. Why are tourist homes and trailer camps retail but apartment houses not? While income tax return preparers (classified as non-retail) may serve only an occasional need, is that not also true of funeral homes and embalming establishments (classified as retail)? Is the need for landscapers and waste removers (classified as non-retail) less everyday than for piano tuners and taxidermists (classified as retail)? Why did Congress' determination that laundries were not retail, *see* 95 Cong.Rec. 12503, not also mandate that "automobile laundries" (classified as retail) be classified as non-retail? Suffice it to say that the list does not appear to flow from any cohesive criteria for retail and non-retail establishments.

rent litigation solely in order to rationalize the result she had already reached; we do not defer to such a construction. *See Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962).

Our refusal to defer to the Secretary's purported application of § 779.318 is not, however, a rejection of that provision itself, nor even of the ultimate conclusion that the provision should be applied here and that it compels the result urged by the Secretary. Section 779.318's elaboration of the term "retail establishment" is independent of the Secretary's list of non-retail establishments in § 779.317; our rejection of the latter's treatment of educational institutions as irrational does not imply that the former provision is itself in any way faulty. To the contrary, § 779.317 appears quite reasonable. The provision states that retail establishments serve the everyday needs of the local community, stand at the end of a system of distribution, and provide services for the comfort and convenience of the general public's daily routine. This description of the characteristics of retail establishments reasonably coincides with the distinctions between local retailers and wholesalers and manufacturers; it certainly represents a rational construction of the term "retail establishment" and provides substantial guidance in determining which institutions should be classified as retail establishments. The regulation is accordingly valid and we apply it here.

We begin with the general question of whether any schools should be characterized as retail under the regulation. Although the question is a close one, we believe the better answer to be that under the FLSA at least some schools are retail. First, although Congress' exception of schools from the retail exemption of § 213(a)(2) does not indicate that all schools

are retail, *see supra*, it at least suggests that Congress thought it likely that some schools would be classified as retail. Second, the Secretary has long considered at least some schools—those for the handicapped and gifted—to be retail establishments. While we have found her division between retail and non-retail schools to be irrational, we do not think that her conclusion that at least some schools are retail establishments is similarly irrational. Third, § 779.318's characterization of a retail establishment as one that "serves the everyday needs of the community in which it is located" fairly describes some levels of educational institutions. For these reasons, we believe that, at least under our application of the agency's regulations, some schools qualify as retail establishments.

Having determined that some schools are retail establishments, we must rationally distinguish between those educational institutions that are retail and those that are not—a problem that proved the undoing of the agency's listings. We begin with the regulations' description of a retail establishment as one that serves the everyday needs of the community. Certainly, there is an everyday need for basic schooling at the primary and secondary level. Such schooling enables individuals to understand and participate in a community's basic social life; it instills a common basis of language and learning that helps to define and maintain the community. It is necessary for the maintenance of a community's daily routine.[3]

On the other hand, post-graduate or occupational training such as provided by trade schools serves a more specialized function. Society's everyday needs are not served directly by the provision of such training but rather by the services that can be rendered by the graduates of such programs. For example, advanced education in law or hotel management does not serve

3. We need not decide here whether, as a higher and higher percentage of society becomes college educated, such education has become sufficiently basic to an individual's ability to participate in the community's social life that a college should also be treated as serving a community's everyday needs. The question whether a college should be treated as a retail establishment is not before us, and therefore we express no opinion on the Fourth Circuit's analysis of the retail establishment question in *Hodgson v. Duke University*, 460 F.2d 172 (4th Cir.1972).

the purpose of integrating individuals into the community or providing a common bond of culture; instead, such training is necessary primarily because the community has a need for legal services or hotels. Although legal services and hotels themselves may address the community's everyday needs, institutions that train individuals to perform the relevant services do not.[4]

We find additional support for the division between basic and specialized education in the regulation's explanation that a retail establishment "performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process." § 779.318(a). Because society has a direct need for basic education, that education is an "end product" distributed by schools of basic learning. They are, so to speak, at the end of a system of distributing essential learning. Specialized training, however, does not serve a direct need of society; instead, as we have explained, graduates of such programs are necessary to society only because of the services they can provide. It is those services which reflect the everyday needs of society; the schools are part of the system for "manufacturing" such services with the end of the system of distribution occurring at the service shops themselves. For example, it is the barber shop and not the school of cosmetology that represents the end of the system for distributing hair care.

 We believe, therefore, that the question of whether an education institution is a retail establishment depends upon the level of education it provides and not upon the characteristics of its students. Elementary schools and high schools are retail establishments because they instill learning that serves society's basic need that its members be educated. Specialized schools such as professional and graduate institutions are not because their role in the community

is to produce graduates who are able to serve society's needs. The latter is more analogous to the "manufacturing" than the "retail" concept.

From the above, we find that application of the characteristics contained in § 779.318(a) makes RSI a non-retail establishment. It provides specialized training in refrigerator repair. This training does not serve society's daily needs. Refrigeration repair training does not help to integrate individuals fully into the community's social life. Instead, the education serves to produce individuals trained to serve society's need for refrigerator repair services. Thus, society's need for refrigeration repair schools is a derivative need, one not at the end of the system for distributing refrigerator repair services. The school encompasses the "manufacturing" and not the "retail" concept. Accordingly, under the Secretary's current regulations, RSI is not a retail establishment for purposes of the FLSA.

We note that our holding is limited to our interpretation of the Secretary's current regulations and does not constitute a definitive interpretation of the FLSA. All we hold is that § 779.317 is not rational insofar as it relates to educational institutions and that under the guidelines established in § 779.318 RSI is not a retail establishment. We express no view regarding how the Secretary should treat educational institutions under the Act itself, or how her regulations should be revised with respect to such institutions. That is a matter for her to evaluate initially.

As to the interest to be paid on the back wages due, it was an abuse of discretion not to include pre-judgment interest. *See Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir.1986).

AFFIRMED in part, REVERSED AND REMANDED as to the award of pre-judgment interest.

---

**4.** We are aware that in the regulations hotels are classified as retail establishments and legal offices are not. We use these solely by way of

example. We make no comment as to the logic of the regulations, *see* note 2 *supra*.